MAYER, Circuit Judge, announced the judgment of the court, and filed the opinion for the court with respect to Part I, in which MICHEL, Chief Judge, NEWMAN, Circuit Judge, PLAGER, Senior Circuit Judge, and SCHALL, GAJARSA, and LINN, Circuit Judges, join, and filed an opinion with respect to Part II, in which MICHEL, Chief Judge, NEWMAN, Circuit Judge, PLAGER, *834 Senior Circuit Judge, and GAJARSA, Circuit Judge, join. GAJARSA, Circuit Judge, filed a concurring opinion, in which NEWMAN, Circuit Judge, and PLAGER, Senior Circuit Judge, join. MOORE, Circuit Judge, filed an opinion concurring in part and dissenting in part, in which PROST, Circuit Judge, joins, and in which LOURIE, RADER, BRYSON, and DYK, Circuit Judges, join in part. BRYSON, Circuit Judge, filed a dissenting opinion, in which LOURIE, RADER, and DYK, Circuit Judges, join, and in which SCHALL and LINN, Circuit Judges, join in part. DYK, Circuit Judge, filed a dissenting opinion.
MAYER, Circuit Judge.
John E. Kirkendall appeals the decision of the Merit Systems Protection Board, which dismissed his claims that he had been discriminated against in violation of the Veterans Employment Opportunities Act of 1998 (‘VEOA”), 5 U.S.C. § 3330a (2000), and the Uniformed Services Employment and Reemployment Rights Act (“USERRA”), 38 U.S.C. § 4311 (2000). Kirkendall v. Dep’t of the Army, AT-3443-02-0622-1-1, AT-0330-02-0621-B-1, 2004 WL 2359294 (MSPB Oct. 13, 2004). Because the VEOA is subject to equitable tolling and Kirkendall is entitled to a hearing on his USERRA claim, we reverse and remand.

Background

Kirkendall, a 100% disabled veteran who suffers from organic brain syndrome, applied for a position as a Supervisory Equipment Specialist (Aircraft), GS-1670-12, with the Department of the Army (“agency”) at Fort Bragg, North Carolina. Kirkendall’s service and resulting disability entitled him to a 10-point preference. He included a resume with his application, which indicated, inter alia, that he had admirably served as the Commander of a Direct Support Platoon at Fort Bragg, and as a Force Integration Officer and an Executive Officer/Commander at Fort Bliss, Texas. In addition, Kirkendall’s resume listed numerous, specific duties he had performed, as well as several technical courses he had taken while in the Army. On January 5, 2000, the agency found that Kirkendall’s application lacked sufficient detail regarding his experience and rated him ineligible for the position. Kenneth Black, also a 10-point preference eligible veteran, was chosen to fill the position.
Kirkendall filed several complaints with the agency contesting his non-selection, all of which were denied. He then filed a formal complaint with the Department of Labor (“DoL”) claiming a violation of his veterans’ preference rights and discrimination based on his disability. On November 29, 2001, DoL rejected the complaint because it had not been filed within 60 days of the agency’s alleged violation as required by 5 U.S.C. § 3330a(a)(2)(A). On June 13, 2002, Kirkendall appealed to the Merit Systems Protection Board.
The administrative judge (“AJ”) dismissed Kirkendall’s USERRA claim for failure to state a claim, and dismissed his VEOA claim on the ground that where DoL rejects a VEOA complaint as untimely, the board has no authority to decide whether DoL should have waived the 60-day deadline. The AJ dismissed the VEOA claim on the further ground that Kirkendall failed to appeal DoL’s rejection to the board within 15 days, as required by 5 U.S.C. § 3330a(d)(l)(B), and that the 15-day deadline could not be equitably relaxed. The board affirmed the AJ’s decision that the VEOA claim was precluded for failure to timely file, but reversed the determination that Kirkendall had failed to state a proper claim for relief under US-ERRA. Rather, the board held that Kirk-endall’s assertion that he was not selected *835 based on his status as a disabled veteran was cognizable. On remand, the AJ held, without a hearing, that Kirkendall had offered no proof that his veteran status was a substantial or motivating factor in his non-selection. Kirkendall again petitioned the full board for review, but review was denied, and the AJ’s remand decision became final.
Kirkendall appealed, and a panel of this court reversed and remanded the decision, holding that the board erred by failing to toll the filing periods contained in 5 U.S.C. § 3330a and by refusing to hold a hearing on his USERRA claim. Kirkendall v. Dep’t of the Army, 412 F.3d 1273 (Fed.Cir.2005). The court then granted the government’s petition for rehearing en banc, and vacated the panel’s opinion. Kirkendall v. Dep’t of the Army, 159 Fed.Appx. 193 (Fed.Cir.2006) (per curiam order).
The order granting en banc review asked the parties to brief three issues: (1) Is the 15-day period for filing appeals to the Merit Systems Protection Board set forth in 5 U.S.C. § 3330a(d)(l)(B) subject to equitable tolling? (2) Is the 60-day period for filing a claim with the Secretary of Labor set forth in 5 U.S.C. § 3330a(a)(2)(A) subject to equitable tolling? (3) Are all veterans who allege a USERRA violation entitled to a hearing under 5 U.S.C. § 7701? Id. at 194.[1]

Discussion

Preliminarily, we find no merit in the government’s suggestion that DoL’s rejection of Kirkendall’s complaint as untimely under 5 U.S.C. § 3330a(a)(2)(A) constitutes a failure to exhaust administrative remedies depriving both the board and this court of jurisdiction over his VEOA claim.[2] Because the question of whether section 3330a(a)(2)(A) is subject to equitable tolling was at issue, the board had the authority and the obligation to consider whether DoL’s action was in error. See Bowen v. City of N.Y., 476 U.S. 467, 482, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (excusing claimants’ failure to exhaust their administrative remedies for the same reasons the Court found the underlying timeliness requirement subject to equitable tolling); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (“[Fjiling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.”); Garcia v. Dep’t of Homeland Sec., 437 F.3d 1322, 1331 (Fed.Cir.2006) (en banc) (The board has “jurisdiction to determine its jurisdiction.”) (quoting Cruz v. Dep’t of Navy, 934 F.2d 1240, 1244 (Fed.Cir.1991) (en banc)). To conclude otherwise would foreclose judicial review of DoL’s rejection, despite the possibility of tolling, and con *836 flict with the “strong presumption that Congress intends judicial review of administrative action.” Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); see also Conoco, Inc. v. U.S. Foreign-Trade Zones Bd., 18 F.3d 1581, 1585 (Fed.Cir.1994) (“It is well established that judicial review of agency action is to be presumed, absent clear and convincing evidence of Congressional intent to the contrary.”). We, of course, have authority to review the board’s decision under 28 U.S.C. § 1295(a)(9).
I. Equitable Tolling
In deciding whether the timing provisions at issue here are subject to equitable tolling, we are guided by Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). There the Supreme Court established the presumption that equitable tolling is available in suits against the government when permitted in analogous private litigation. Id. at 95-96, 111 S.Ct. 453. A precise private analogue is not required; only that there be sufficient similarity between the suits. See Scarborough v. Principi, 541 U.S. 401, 422, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (“Litigation against the United States exists because Congress has enacted legislation creating rights against the Government, often in matters peculiar to the Government’s engagements with private persons-matters such as the administration of benefit programs. Because many statutes that create claims for relief against the United States or its agencies apply only to Government defendants, Irwin’s reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent.”).
In so establishing the presumption in favor of equitable tolling, the Court recognized that once the government has consented to be sued through a waiver of sovereign immunity, “making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver.” Irwin, 498 U.S. at 95, 111 S.Ct. 453. Instead, “[sjueh a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation.” Id. Moreover, it cautioned that “we must be careful not to assume the authority to narrow the waiver that Congress intended, or construe the waiver unduly restrictively.” Id. at 94, 111 S.Ct. 453 (quoting Bowen, 476 U.S. at 479, 106 S.Ct. 2022) (internal quotation marks omitted).
However, in order to honor congressional intent, the Irwin presumption can be rebutted if “there [is] good reason to believe that Congress did not want the equitable tolling doctrine to apply.” United States v. Brockamp, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997); see also Young v. United States, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (“It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute.”) (citations and internal quotation marks omitted); United States v. Beggerly, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (“Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute.”). We have interpreted this to mean that “absent a clear contrary intent of Congress to limit jurisdiction created by a particular statute,” we will apply the presumption. Bailey v. West, 160 F.3d 1360, 1368 (Fed.Cir.1998) (en banc) (emphasis added). To make this determination, we look to the factors enumerated by the Supreme Court in Brock-amp: “the statute’s detail, its technical *837 language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter.” Brice v. Sec’y of Health & Human Servs., 240 F.3d 1367, 1372 (Fed.Cir.2001) (citing Brockamp, 519 U.S. at 350-52, 117 S.Ct. 849). Every factor need not be present to find that Congress intended to preclude tolling, Brice, 240 F.3d at 1372-73, and while unlikely, it is possible for a single factor to be dispositive.
In sum, to determine the availability of equitable tolling in suits against the government, we engage in a two-part inquiry. First, we determine whether such tolling is available in a sufficiently analogous private suit. If so, we look to the Brockamp factors to determine whether Congress expressed a “clear intent” that equitable tolling not apply.
A.
Turning to the matter at hand, the purpose of the VEOA is to provide preference eligible veterans with a method for seeking redress where their veterans’ preference rights have been violated in hiring decisions made by the federal government. Where a veteran establishes a violation, the agency is ordered to comply with the veterans’ preference statutes and award compensation for any lost wages or benefits suffered by reason of the violation. 5 U.S.C. § 3330c(a). Moreover, if the violation is found to be willful, the agency is ordered to pay the aggrieved veteran “an amount equal to backpay as liquidated damages.” Id. Accordingly, we find that Kirkendall’s VEOA claim is sufficiently analogous to private actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to invoke the presumption that equitable tolling applies here. See Irwin, 498 U.S. at 95, 111 S.Ct. 453 (holding that “the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling”); Brice, 240 F.3d at 1372 (holding that claims under the Vaccine Act are sufficiently similar to tort claims so as to invoke the Irwin presumption). This leaves only the question of whether Congress has evinced a clear intent to rebut that presumption.
B.
Kirkendall missed both relevant timing provisions under 5 U.S.C. § 3330a. Therefore, if either period is not subject to equitable tolling, his VEOA claim is barred. Because the government concedes that 5 U.S.C. § 3330a(a)(2)(A)[3] is subject to equitable tolling, and because, if anything, it is comparatively less emphatic, less detailed, and less technical than 5 U.S.C. § 3330a(d)(l),[4] we begin our analysis with section 3330a(d)(l). The government argues, based primarily on section 3330a(d)(l)’s “in no event” clause, that *838 Congress manifested a clear intent to rebut the Irwin presumption. We disagree.
While the “in no event” clause is certainly strong, when the statute’s language is considered as a whole and that clause is evaluated in context, the statute’s technical language is little more than a neutral factor in our analysis under Brockamp. When taken together with the remaining factors, it certainly does not operate to rebut the Irwin presumption. To begin, the clause at issue, “except that in no event,” introduces section 3330a(d)(l)(A), which provides that an appeal may not be brought “before the 61st day after the date on which the complaint is filed.” Because section 3330a(d)(l) explicitly stipulates that the Secretary of Labor is to have 60 days to resolve veterans’ VEOA complaints before they may seek redress from the board, the clause primarily operates to emphasize Congress’ intent to provide a 60-day window left exclusively for DoL review. Because the “in no event” clause first introduces a timing requirement that is not a “deadline” that a complainant can “miss” in a manner giving rise to a late filing, which would thereby invoke considerations of equitable tolling, that clause can hardly be viewed as either clear or emphatic evidence of Congress’ intent to foreclose equitable tolling under section 3330a(d)(l)(B).
Moreover, Irwin, 498 U.S. at 95, 111 S.Ct. 453, which “adopt[ed] a more general rule to govern the applicability of equitable tolling in suits against the Government,” cautioned against reading too much into seemingly stringent language setting forth a statute’s timing requirements. There, the Supreme Court found equitable tolling equally available in two statutes providing for actions against the government, one of which stated, “[w]ithin thirty days ... an employee ... may file a civil action,” while the other provided, “[e]very claim ... shall be barred unless the petition ... is filed ... within six years.” Id. at 94-95, 111 S.Ct. 453 (emphases added). As the Court explained, “An argument can undoubtedly be made that the latter language is more stringent than the former, but we are not persuaded that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling.” Id.
Lending additional support, Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874), involved statutory language that is decidedly analogous to that found here, and further illustrates the limited role that these more subtle distinctions in Congress’ choice of language play in a court’s analysis into whether it may equitably relax a deadline. There, the Supreme Court allowed a plaintiffs late-filed claim to proceed despite statutory language that provided, “no suit at law or in equity shall in any case be maintainable ... in any court whatsoever, unless ... brought within two years.” Id. at 344, 88 U.S. 342 (emphasis added). While Bailey v. Glover specifically relates to claim accrual, not equitable tolling, the Supreme Court nevertheless cites it in Young, 535 U.S. at 49, 122 S.Ct. 1036, to support the proposition that limitation periods are customarily subject to equitable tolling, unless it “would be ‘inconsistent with the text of the relevant statute.’ ” (citations omitted). In other words, despite the statute’s admonishment that “no suit ... shall in any case be maintainable,” the Court, nonetheless, found that equitable relief was not inconsistent.
With respect to the propriety of applying Bailey v. Glover, to an equitable tolling case, the Supreme Court also cited it in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), as a case relating to equitable tolling. More *839 over, Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), which was cited in Irwin, held that despite the statutory command, “No action shall be maintained ... unless commenced within three years from the day the cause of action accrued,” because the defendant’s fraud caused the plaintiff to let the filing period lapse, the defendant was equitably estopped from using the late filing to bar the action. Glus is an equitable estoppel case, but Irwin, relied on it for the proposition that, “We have allowed equitable tolling in situations ... where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass.” 498 U.S. at 96 n. 4, 111 S.Ct. 453 (emphasis added). Certainly, the availability of the various equitable remedies for relaxing limitations periods are governed by differing considerations, but as the Supreme Court makes clear, these remedies are sufficiently similar that precedents relating to the availability of one are applicable to the others.
In addition, further analysis of Brockamp illustrates the error and weakness in the government’s reliance on the “in no event” clause. The statute at issue there, 26 U.S.C. § 6511, provides that a “[c]laim for ... refund ... shall be filed ... within 3 years.” 519 U.S. at 349-54, 117 S.Ct. 849. Despite the similarity between the “shall be filed” language and the “shall be barred” clause in Irwin, where equitable tolling was found to apply, Brockamp found equitable tolling unavailable under section 6511. It even characterized the manner in which the statute set forth time limitations as “unusually emphatic.” 519 U.S. at 350, 117 S.Ct. 849. This apparent contradiction is readily explained, however, because the Court paid little, if any, attention to the specific language introducing section 651 l’s timing provision. Instead, the Court based its conclusion on the fact that the statute “sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, § 6511 reiterates its limitations several times in several different ways.” Id. at 350-51, 117 S.Ct. 849. It further elaborated that “ § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include ‘equitable tolling’” and “to read an ‘equitable tolling’ provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc.” Id. at 351-52, 117 S.Ct. 849. The Court also pointed to policy considerations underscoring the need for repose and administrative simplicity in tax cases. In other words, it was a comprehensive view of the statute as a whole and the purpose of the statutory scheme that drove the analysis, not rudimentary reliance on the seemingly, or not so seemingly, stringent nature of the language introducing the statute’s timing provisions.
The Supreme Court’s decision in Lampf further illuminates our discussion. Despite the fact that the statute at issue there, 15 U.S.C. § 77m, contains an “in no event” clause, that specific language did not play a significant role in the Court’s holding that equitable tolling was not available. Instead, as in Brockamp, it relied heavily on the statute’s highly technical structure and its explicit allowance for “tolling” within the statute.[5] See 501 U.S. *840 at 363, 111 S.Ct. 2773; see also Beggerly, 524 U.S. at 48, 118 S.Ct. 1862 (finding that judicially provided equitable tolling was unavailable because the Quiet Title Act, 28 U.S.C. § 2409a, by providing that the 12-year statute of repose will not “begin to run until the plaintiff ‘knew or should have known of the claim of the United States,’ has already effectively allowed for equitable tolling ”) (emphasis added). Indeed, the provision at issue in Lampf provides that suits must be brought either within one year from discovery of the facts constituting a violation, or within the three-year “period of repose,” i.e., the explicit exception providing for “tolling,” which runs from the date of the relevant transaction. Therefore, the Court said, “Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.” 501 U.S. at 363, 111 S.Ct. 2773.
Therefore, given (1) Irwin’s command that courts should be wary of allowing subtle distinctions in Congress’ choice of language to unduly drive the inquiry into its intent, especially when viewed in light of the Supreme Court analysis in Lampf and Brockamp; (2) the substantial similarity between the “in no event” language here and the language in Bailey v. Glover, and (3) the purpose of the “in no event” clause within section 3330a(d)(l), we find that the statutory language itself is not unusually emphatic. Rather, in this context, it is analogous to the statutory language of “barred” and “shall be filed” found in Glus, 359 U.S. at 231, 79 S.Ct. 760; Irwin, 498 U.S. at 95, 111 S.Ct. 453; Bailey v. West, 160 F.3d at 1361; and Former Employees of Sonoco Products Co. v. Chao, 372 F.3d 1291, 1293 (Fed.Cir.2004)-all cases in which the relevant statutes were found to be subject to equitable tolling. Because the “in no event” language is of limited, if any, special importance, we firmly reject the government’s contention that allowing equitable tolling here renders that language superfluous. Cf. Brown v. Gardner, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“[Wjhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.”) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).[6]
*841 Consistent with Irwin, we perceive no meaningful difference in Congress’ intent with respect to the availability of equitable tolling in the statutes at issue here, despite the fact that arguments can undoubtedly be made in support of the proposition that the “in no event” language under section 3330a(d)(l) is more stringent than the “must be filed” language of section 3330a(a)(2)(A). See 498 U.S. at 94-95, 111 S.Ct. 453.
Analysis of the remaining Brockamp factors gives us the firm and definite conviction that Congress did not intend to override the Irwin presumption. First, section 3330a is not detailed. This is especially true in comparison with other administrative schemes held subject to equitable tolling, such as Title VII, Irwin, 498 U.S. at 92, 111 S.Ct. 453, and Social Security, Bowen, 476 U.S. at 469, 106 S.Ct. 2022. Similarly, section 3330a is less detailed than the highly complex scheme used to provide benefits to veterans. See Bailey, 160 F.3d 1360 (holding that 38 U.S.C. § 7266 is subject to equitable tolling). But see Brice, 240 F.3d at 1373 (holding that the National Childhood Vaccine Injury Act is “part of a detailed statutory scheme which includes other strict deadlines”).
Second, section 3330a’s fairly simple language is not technical, especially as compared to the tax statute at issue in Brock-amp and the securities statute at issue in Lampf. Third, the timing provisions in section 3330a are not repeated. See Brockamp, 519 U.S. at 351, 117 S.Ct. 849 (“[Section] 6511 reiterates its limitations several times in several different ways.”). Fourth, section 3330a does not contain explicit exceptions to the two filing deadlines. See Bailey, 160 F.3d at 1365 (“Likewise, section 7266 does not provide its own exceptions to the general rule.”); see also Brockamp, 519 U.S. at 351, 117 S.Ct. 849 (“[Section] 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include ‘equitable tolling.’ ”); Martinez v. United States, 333 F.3d 1295, 1318 (Fed.Cir.2003) (en banc) (finding that 28 U.S.C. § 2501 contains an explicit exception for “persons ‘under legal disability’ ”); Brice, 240 F.3d at 1373 (“[T]he Act includes a specific exception from the limitations period for a petition improperly filed in state or federal court.”). Moreover, the 15-day filing period under section 3330a(d)(l)(B) is extraordinarily short, in sharp contrast to the three-year period of repose in Lampf, and the “unusually generous” 12-year period of repose in Beggerly, 524 U.S. at 48-49, 118 S.Ct. 1862.
Finally, section 3330a’s purpose and the statutory scheme in which it operates make it abundantly clear that the Irwin presumption is not rebutted. The purpose of the VEOA is to assist veterans in obtaining gainful employment with the federal government and to provide a mechanism for enforcing this right. In a very real sense, it is an expression of gratitude by the federal government to the men and women who have risked their lives in defense of the United States. It defies logic to suppose that when Congress adopted the VEOA in 1998, well after the Supreme Court’s decision in Irwin, it intended the narrow interpretation that the government gives it. See Young, 535 U.S. at 49-50, 122 S.Ct. 1036 (“Congress must be presumed to draft limitations periods in light of [the Irwin presumption].”) (citations omitted).
It is also relevant that veterans who seek to enforce their rights under the VEOA often proceed without the benefit of representation, just as Kirkendall did. Under such circumstances, it is “particu *842 larly inappropriate” to foreclose equitable relief. Zipes, 455 U.S. at 397, 102 S.Ct. 1127 (quoting Love v. Pullman, 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)); see also Bowen, 476 U.S. at 480, 106 S.Ct. 2022 (“The statute of limitations we construe in this case is contained in a statute that Congress designed to be unusually protective of claimants.”) (internal quotation marks omitted).
C.
The government raises one final objection to our holding. It argues that because section 3330a(d)(l)(B) sets forth a provision specifying the time for review, it is “mandatory and jurisdictional,” and “not subject to equitable tolling.” See Stone v. INS, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (quoting Missouri v. Jenkins, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990)). This contention is without merit. In Bailey v. West, we also confronted a statute specifying the time for review, and sitting en banc, we found that 38 U.S.C. § 7266 is subject to equitable tolling. We held, “statutes specifying the time for review are within the rebuttable presumption in favor of equitable tolling.” 160 F.3d at 1367. We further stated: “We recognize that language in Stone and Missouri v. Jenkins can be read to draw a bright line which would place statutes of limitation on one side of the Irwin presumption and statutes of timing of review on the other. We are not comfortable drawing that line, because the language of Irwin admits of no such distinctions.... Missouri v. Jenkins was decided only a few months before Irwin. If the Supreme Court had meant to shield statutes specifying the time for review from the Irwin presumption, we would have expected the distinction to be drawn in Irwin.” Id.; accord Socop-Gonzalez v. INS, 272 F.3d 1176, 1192-93 (9th Cir.2001) (en banc) (“Like the Federal Circuit, we do not believe that the Supreme Court meant to distinguish between statutes of limitations and statutes specifying the time for review when it established the generally applicable rule in Irwin that time limits involved in filing suit against the government are presumed to be subject to equitable tolling.”).
In decisions post-dating Bailey, the Supreme Court has “clarified that time prescriptions, however emphatic, ‘are not properly typed “jurisdictional.” ’ ” Arbaugh v. Y & H Corp., 546 U.S. 500, 126 S.Ct. 1235, 1242, 163 L.Ed.2d 1097 (2006) (quoting Scarborough v. Principi, 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004)). In Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403, 405, 163 L.Ed.2d 14 (2005), the Court stated: “ ‘Clarity would be facilitated,’ we have said, ‘if courts and litigants used the label “jurisdictional” not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.’ ” (Quoting Kontrick v. Ryan, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). The Court acknowledged that its “repetition of the phrase ‘mandatory and jurisdictional’ ha[d] understandably led the lower courts to err on the side of caution by giving [certain time limitations] the force of subject-matter jurisdiction.” Eberhart, 126 S.Ct. at 407. These decisions establish that timing provisions like those of section 3330a are not necessarily “mandatory” or “jurisdictional,” and they bolster Bailey’s holding that Stone and Missouri v. Jenkins cannot be read to create a per se rule placing “statutes of limitation on one side of the Irwin presumption and statutes of timing of review on the other.” Bailey, 160 F.3d at 1367.
The fact that some provisions specifying the time for review are not subject to *843 equitable tolling is irrelevant to our analysis as to whether it is available under this statute, section 33S0a(d)(l)(B). Rather, such holdings are in accord with Irwin’s command that equitable tolling shall not apply where Congress has so provided. 498 U.S. at 96, 111 S.Ct. 453; see, e.g., Stone, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (holding that based on the statutory text and structure and the nature of congressional amendments to the statutory scheme, motions for reconsideration of a decision by the Board of Immigration Appeals do not toll the 90-day period to appeal a final deportation order); Missouri v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (holding that where the statute at issue provided for an additional 60 days to file for good cause shown and Congress had demonstrated an intent to preclude tolling, the 90-day period to file a petition for certiorari to the Supreme Court was not subject to equitable tolling); Oja v. Dep’t of the Army, 405 F.3d 1349 (Fed.Cir.2005).[7]
When we consider that the timing provision at issue here is analogous to those found subject to equitable tolling in Irwin, 498 U.S. at 94, 111 S.Ct. 453 (30-day window in which to seek review in district court of a final action by the EEOC),[8] and Bowen, 476 U.S. at 472, 106 S.Ct. 2022 (60-day window in which to seek “review” of a denial of social security benefits by the Secretary of Health and Human Services),[9] our holding is unremarkable and entirely consistent with Supreme Court precedent. This is especially so in view of Irwin’s pronouncement that it “adopt[ed] a more general rule to govern the applicability of equitable tolling in suits against the Government,” and that “[t]he phraseology of th[e] particular statutory time limit [in 42 U.S.C. § 2000e-16] is probably very similar to some other statutory limitations on suits against the Government.” Id. at 94-95, 111 S.Ct. 453.
D.
Even if this were a close case, which it is not, the canon that veterans’ benefits statutes should be construed in the veteran’s favor would compel us to find that section 3330a is subject to equitable tolling. See King v. St. Vincent’s Hosp., 502 U.S. 215, 220 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (“Even if the express examples [from other subsections of the statute at issue] unsettled the significance of subsection (d)’s drafting, however, we would ultimately read the provision in King’s favor under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries’ favor.”); Ala. Power Co. v. Davis, 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977) (“This legislation is to be liberally construed for the benefit of *844 those who left private life to serve their country in its hour of great need.”) (quoting Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946)). Both subsection 3330a(a)(l)(A) and subsection 3330a(d)(l)(B) are subject to equitable tolling.
II. Hearing Rights Under USERRA
With respect to hearing rights, our analysis begins with the USERRA statute itself. See Sheehan v. Dep’t of the Navy, 240 F.3d 1009, 1012 (Fed.Cir.2001) (deciding the burden of proof requirement for USERRA actions “[o]n the basis of the statute and the appurtenant legislative history”). 38 U.S.C. § 4324(c)(1) provides: “The Merit Systems Protection Board shall adjudicate any complaint brought before the Board pursuant to subsection (a)(2)(A) or (b).... A person who seeks a hearing or adjudication by submitting such a complaint under this paragraph may be represented at such hearing or adjudication in accordance with the rules of the Board.” The unambiguous meaning of the language is that any veteran who requests a hearing shall receive one. Indeed, section 4324(c)(1) begins, the board “shall adjudicate any complaint brought before [it].” The discretion it then affords does not relate to whether a hearing may be denied, but to how the veteran “may be represented” at the “hearing or adjudication.” By providing that the board shall adjudicate all USERRA claims brought before it and affording discretion over how the veteran may be represented at any requested “hearing or adjudication,” the statute clearly evinces Congress’ intent to provide veterans with a hearing as a matter of right. To interpret the statute otherwise would render the “such hearing” language nonsensical. The board has discretion neither to deny a requested “adjudication,” nor to deny a requested “hearing.”
Until now, it has been the board’s practice to grant a hearing as a matter of administrative grace, or deny one at its convenience. See, e.g., Matotek v. Dep’t of Commerce, 104 M.S.P.R. 36, 41 (2006); Jordan v. U.S. Postal Serv., 90 M.S.P.R. 525, 529 (2002), aff'd, 82 Fed.Appx. 42 (Fed.Cir.2003). But it must administer the law as Congress wrote it. The board’s consistent misapplication of the law can neither be used to defend its practice; nor to justify what Congress did not intend. See Brown v. Gardner, 513 U.S. 115, 120-21, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (where the Department of Veterans Affairs’ 60-year regulatory practice was contrary to statute, congressional reenactment of the statute and legislative silence did not constitute an implicit endorsement); see also Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (“Where the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction.”); Mass. Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 241-242, 84 S.Ct. 1236, 12 L.Ed.2d 268 (1964) (congressional reenactment has no interpretive effect where regulations clearly contradict requirements of statute). To be sure, the board is free to set out regulations for the orderly conduct of business, but it cannot use that discretion to override the congressionally mandated right to a hearing.
5 U.S.C. § 7701(a) lends additional support to our reading of section 4324(c). It provides: “An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appeal-able to the Board under any law, rule, or regulation. An appellant 'shall have the right — (1) to a hearing for which a tran *845 script will be kept; and (2) to be represented by an attorney or other representative.” Plainly, Kirkendall’s USERRA claim is “appealable” to the board under section 4324, and therefore constitutes an “appeal” entitled to a hearing. Cf. 5 C.F.R. § 1208.4(c) (“ ‘USERRA appeal’ means an appeal filed under 38 U.S.C. § 4324.”); 5 C.F.R. § 1208.13 (characterizing board review of USERRA claims as “USERRA appeals”); see also Kirkendall v. Dep’t of the Army, AT-3443-02-0622-I-1, AT-0330-02-0621-B-1 (MSPB Dec. 4, 2003) (referring to board review of Kirken-dall’s USERRA claim as an “appeal”).
It is true, as the government argues, that Kirkendall’s proceeding before the board is not an appeal in the traditional Article III sense, as defined by Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), but this is of no moment. In providing procedural protections for employees of and applicants to the federal government, e.g., 5 U.S.C. § 7512, Congress made clear its intent to vary the Marbury definition of “appeal” in federal employment contexts. Indeed, the vast majority of cases heard by the board, and subject to section 7701 procedures, are “appeals” of employment decisions, disciplinary or otherwise, made in the first instance by an agency. See, e.g., Price v. Soc. Sec. Admin., 398 F.3d 1322 (Fed.Cir.2005); Guillebeau v. Dep’t of the Navy, 362 F.3d 1329 (Fed.Cir.2004); Knight v. Dep’t of Def., 332 F.3d 1362 (Fed.Cir.2003). These cases do not involve a lower tribunal, such as a district court, yet they clearly involve an initial decision maker distinct from the board, rendering them an “appeal” of agency action. In the same way, USERRA claims derive from an agency’s employment decision, e.g., the refusal to hire a veteran.
Merely because Congress described Kirkendall’s petition for review as a “complaint” does not suggest that it intended to characterize his action as an “original” proceeding before the board, and deprive him of the right to a hearing. To the contrary, in determining what procedural protections Congress intended to afford USERRA complainants, we look to the substance of the matter, review of an initial agency action, not to the form surrounding it or the name ascribed, initiation of proceedings before the board with a “complaint.” Cf. Dolan v. City of Tigard, 512 U.S. 374, 405 n. 8, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (“In determining what is due process of law regard must be had to substance, not to form.”) (quoting Chicago B. & Q.R. Co. v. Chicago, 166 U.S. 226, 235, 17 S.Ct. 581, 41 L.Ed. 979 (1897)); see also Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed.Cir.1994) (“[W]e look to the true nature of the action in determining the existence or not of jurisdiction.”); Chem. Eng’g Corp. v. Marlo, Inc., 754 F.2d 331, 333 (Fed.Cir.1984) (“Implicit in our mandate is the authority to recharacterize pleadings which would improperly evade the intent of Congress.”); In re Snap-on Tools Corp., 720 F.2d 654, 655 (Fed.Cir.1983) (“The issue here turns on the nature of the action as established in the complaint.”). Moreover, it is incongruous to presume that Congress intended to provide hearings as a matter of right in cases involving discipline for misconduct, e.g., Price, 398 F.3d at 1322 (constructive suspension); Guillebeau, 362 F.3d at 1329 (Fed.Cir.2004) (removal), while declining to so provide for veterans who may have been victimized.
There is no ambiguity here. “Ambiguity is a creature not of definitional possibilities but of statutory context.” Brown, 513 U.S. at 118, 115 S.Ct. 552; see also St. Vincent’s Hosp., 502 U.S. at 221, 112 S.Ct. 570 (“[T]he meaning of statutory language, plain or not, depends on con *846 text.”)- But even if section 4324, especially in the context of section 7701(a), still fairly permitted of more than one interpretation, the rule set out in St. Vincent’s Hospital, 502 U.S. at 220 n. 9, 112 S.Ct. 570; Alabama Power Co., 431 U.S. at 584, 97 S.Ct. 2002; and Fishgold, 328 U.S. at 285, 66 S.Ct. 1105, would demand that we find in Kirkendall’s favor. St. Vincent’s Hospital, and Brown, 513 U.S. at 117-18, 115 S.Ct. 552, make clear that “interpretive doubt is to be resolved in the veteran’s favor” and operate to rebut or eliminate otherwise fair readings in close cases. And this statutory regime emphatically does not admit of deference to the board á la Chevron because “[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.” Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). After applying the interpretive rule in Fishgold, it is abundantly clear that Congress’ intent is to provide veterans a hearing upon request, especially because we “presume congressional understanding of such interpretive principles,” at the time of enactment. St. Vincent’s Hospital, 502 U.S. at 220 n. 9, 112 S.Ct. 570.
Contrary to the government’s assertion, Lindahl v. Office of Personnel Management, 776 F.2d 276 (Fed.Cir.1985), does not conflict with our holding here; in fact, it enhances it. Lindahl provides that, absent a reference to 5 U.S.C. § 7701 in the statute giving rise to the right of action, there 5 U.S.C. § 8347(d)(1), some of its guidelines, whether procedural or substantive, may apply to an action without invoking all of them, as contrasted with cases under 5 U.S.C. § 8347(d)(2), which explicitly refers to section 7701. Id. at 278-80. Indeed, Lindahl, approved of the board’s practice of applying most of section 7701’s procedures to voluntary physical disability retirement cases, but not applying its burden of proof. Id. Similarly, section 4324(c)(1) in this case gives rise to the right to a hearing, while 38 U.S.C. § 4311(c)(1) and the legislative history surrounding USERRA make clear that section 7701(c)’s burden of proof requirement does not apply. See Sheehan, 240 F.3d at 1012-14.
In fact, had Congress referenced section 7701 in the USERRA statute, section 7701(c)’s burden of proof, along with all of section 7701’s remaining procedures, would necessarily apply. Therefore, its decision not to reference this “catch-all” statute does not in any way suggest an intent not to provide a right to a hearing. It only demonstrates that Congress, while providing for a hearing, did not necessarily want all of section 7701 to apply. Consequently, because Kirkendall requested a hearing before the board on his USERRA claim, we reverse the board’s decision to deny him one.

Conclusion

Accordingly, the decision of the Merits Systems Protection Board is reversed, and the case is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

. We are grateful to Theodore B. Olson, Thomas H. Dupree, Jr., and Henry C. Whitaker of Gibson, Dunn & Crutcher LLP, who represented John E. Kirkendall pro bono at the court’s request.

. Before the merits panel, the government argued that the board was without jurisdiction to consider Kirdendall's VEOA appeal because of his alleged failure to exhaust administrative remedies. We addressed that argument, and rejected it. In its petition for rehearing en banc, the government did not renew this argument, and we did not grant rehearing on it. As a general rule, the scope of our en banc review is limited to the issues set out in the en banc order. Accord United States v. Padilla, 415 F.3d 211, 217 (1st Cir.2005) (en banc); Brown v. Stites Concrete, Inc., 994 F.2d 553, 557 (8th Cir.1993) (en banc). It is, therefore, inappropriate for the government now to reargue exhaustion. However, because exhaustion calls into question our jurisdiction over the tolling issues, we address it to clarify that there are no jurisdictional impediments.

. 5 U.S.C. § 3330a(a)(2)(A) provides:
A complaint under this subsection must be filed within 60 days after the date of the alleged violation.

. 5 U.S.C. § 3330a(d)(l) provides:
If the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board in accordance with such procedures as the Merit Systems Protection Board shall prescribe, except that in no event may any such appeal be brought— (A) before the 61 st day after the date on which the complaint is filed; or later than 15 days after the date on which the complainant receives written notification from the Secretary under subsection (c)(2).
(emphasis added).

. 15 U.S.C. § 77m provides:
No action shall be maintained to enforce any liability created under [section 11] or [section 12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discov *840 ery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under [section 12(a)(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under [section 11] or [section 12(a)(1)] more than three years after the security was bona fide offered to the public, or under [section 12(a)(2)] more than three years after the sale.
(emphasis added).

. An attempt to draw a distinction between the "in no event” language from section 3330a(d)(l)(B) and the "must be filed” language of section 3330a(a)(2)(A), see post, separate opinion of Moore, J., is inconsistent with Irwin. Moreover, the circuit court precedents upon which it relies to make this distinction are all either irrelevant or cumulative of Supreme Court precedents considered above. See Dubuc v. Johnson, 314 F.3d 1205 (10th Cir.2003) (the statute at issue, 28 U.S.C. § 1915(g), does not involve a timing provision); Caviness v. DeRand Res. Corp., 983 F.2d 1295, 1300-02 (4th Cir.1993) (interprets the statute at issue in Lampf); Short v. Belleville Shoe Mfg., 908 F.2d 1385 (7th Cir.1990) (same); Aldrich v. McCulloch Props. Inc., 627 F.2d 1036 (10th Cir.1980) (the decision predates Irwin, and the statute at issue, 15 U.S.C. § 1711, is analogous to that in Lampf, i.e., it contains a two-tiered timing structure with a three-year period of repose); Hodgson v. Int'l Printing Pressmen & Assistants’ Union of N. Am., 440 F.2d 1113 (6th Cir.1971) (the decision predates Irwin, waiver of the deadline at issue was permitted, and the statute at issue, *841 29 U.S.C. § 482(b), does not contain "in no event”).

. The dicta in Farzana K. v. Indiana Department of Education, 473 F.3d 703 (7th Cir.2007), discussed, post, separate opinion of Dyk, J., is not authority for anything, much less, for when equitable relaxation of a federal veterans deadline specifying the timing for review is appropriate. Farzana held that the party there did meet a state’s deadline to seek judicial review of a determination, thus making any discussion of equitable relief superfluous.

. 42 U.S.C. § 2000e-16(c) (1988) provides in pertinent part:
Within thirty days of receipt of notice of final action taken by ... the Equal Employment Opportunity Commission ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title.

.42 U.S.C. § 405(g) (1982) provides in pertinent part:
(emphasis added).