# United States Court of Appeals for the Federal Circuit

---

**MICHAEL J. O'FARRELL, JR.,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2017-1223

---

Petition for review of the Merit Systems Protection Board in No. DE-4324-14-0013-I-1.

---

Decided: February 9, 2018

---

DANIEL CRAIG COOLEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for petitioner. Also represented by J. DEREK MCCORQUINDALE; SYDNEY KESTLE, JASON LEE ROMRELL, Washington, DC.

JOSEPH ASHMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before DYK, MOORE, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Petitioner Michael J. O'Farrell, Jr. appealed to the Merit Systems Protection Board ("MSPB"), alleging, inter alia, that his employing agency, the U.S. Department of Defense ("DOD" or "Government") failed to grant him military leave for active military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301–4333 (2012)).[1] An administrative judge ("AJ") issued an initial decision denying Mr. O'Farrell's claim and dismissing his appeal. *See O'Farrell v. Dep't of Def.* (*O'Farrell I*), No. DE-4324-14-0013-I-1, 2016 WL 1014371 (M.S.P.B. Mar. 8, 2016) (J.A. 4–14). On review, the full MSPB issued an order stating that "[t]he two [MSPB] members cannot agree on the disposition of the petition for review," such that *O'Farrell I* "now becomes the final decision of the [MSPB] in this appeal." *O'Farrell v. Dep't of Def.* (*O'Farrell II*), 123 M.S.P.R. 590, 591 (2016) (footnote omitted).[2]

---

[1]    Relevant here, the USERRA provides that

[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

[2]    Accordingly, we refer to the AJ's and MSPB's reasoning interchangeably.

Mr. O'Farrell appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012). We reverse.

BACKGROUND

I. Statutory Framework

When certain reserve military personnel who are employed by the Government are called to active duty, they are "entitled to leave without loss in pay, time, or performance or efficiency rating" that "accrues . . . at the rate of [fifteen] days per fiscal year." 5 U.S.C. § 6323(a)(1) (2012). In addition to these fifteen days,

> an employee . . . who—(1) is a member of a Reserve component of the Armed Forces . . . ; and (2) . . . (B) performs full-time military service as a result of a call or order to active duty *in support of a contingency operation as defined in* [*10 U.S.C. §*] *101(a)(13)* [*(2012)*] . . . ; is entitled . . . to leave without loss of, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance or efficiency rating . . . [that] shall not exceed [twenty-two] workdays in a calendar year.

*Id.* § 6323(b) (emphasis added). In turn, "contingency operation" is defined to include:

> a military operation that . . . (B) results in the call or order to, or retention on, active duty of members of the uniformed services under [10 U.S.C. §§] 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 . . . , [10 U.S.C.] ch[.] 15 . . . , [14 U.S.C. §] 712 . . . , or *any other provision of law . . . during a national emergency declared by the President or Congress.*

10 U.S.C. § 101(a)(13) (emphasis added). Military reserve personnel "call[ed] or order[ed] to active duty under a provision of law referred to in [§] 101(a)(13)(B) . . . shall

be entitled . . . to receive" payment commensurate with the difference between the civilian pay they would have received and their military pay for their period of active duty service. 5 U.S.C. § 5538(a).

II. Factual Background and Procedural History

Mr. O'Farrell served in the U.S. Army for twenty-eight years.[3] J.A. 174. During Mr. O'Farrell's service, on September 11, 2012, President Barack Obama published a notice in the Federal Register "continuing for [one] year the national emergency . . . with respect to the terrorist attacks of September 11, 2001, and the continuing and immediate threat of further attacks on the United States." Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 77 Fed. Reg. 56,517, 56,517 (Sept. 11, 2012). At the time, Mr. O'Farrell worked as a General Attorney in the Office of Counsel for the aviation subordinate command of the Defense Logistics Agency ("DLA") within DOD. J.A. 174. However, on April 17, 2013, Mr. O'Farrell received an order from the U.S. Army directing him to replace a civilian attorney employed with the U.S. Navy's Naval Surface Warfare Center ("NSWC"), Corona Division, in California. J.A. 114; *see* J.A. 175. The NSWC attorney, who also was a member of the U.S. Army Reserve, was replaced because he had been deployed to Afghanistan. J.A. 175. The Order directing Mr. O'Farrell provided:

*You are ordered to active duty for operational support under provision of [*10 U.S.C. §*] 12301 (d) . . .*

---

[3]   "[A]fter reaching [the] maximum total years of active commissioned service for his rank (28 years)," Mr. O'Farrell "was transferred to the U.S. Army Reserve Retired List" in October 2013. J.A. 174. It is undisputed that Mr. O'Farrell was a member of the U.S. Army Reserve at all times relevant to this appeal. J.A. 5.

for the period shown plus the time necessary to travel. You will proceed from your home or current location in time to report for duty on [April 22, 2013]. Upon completion of this duty, unless sooner released, you will return to your home and upon arrival be released from active duty.

J.A. 114 (capitalization modified) (emphasis added). The Order further stated that Mr. O'Farrell's "operational support" would consist of his "serv[ic]e as[] legal counsel" at NSWC. J.A. 114 (capitalization omitted).

After receiving the Order, Mr. O'Farrell served his active duty as legal counsel at NSWC for a total of 162 days until September 30, 2013. J.A. 174. The parties do not dispute that, by August 26, 2013, Mr. O'Farrell had used his fifteen days of military leave pursuant to § 6323(a)(1), as well as most of his accrued annual leave and advance annual leave. *See* J.A. 5–6. To avoid being placed on Military Leave Without Pay for the remainder of his active duty service, Mr. O'Farrell requested an additional twenty-two days leave pursuant to § 6323(b) in an email exchange with a representative at DLA. *See* J.A. 102–13. Although Mr. O'Farrell acknowledged that the Order did not cite any of the statutory provisions listed in § 101(a)(13) that qualify as support for a contingency operation, he explained that he was "serving under 'any other provision of law . . . during a national emergency declared by the President or Congress,' . . . because . . . [§] 12301(d) is 'any other provision of law' and[,] on September 11, 2012[,] President Obama extended the state of emergency that has existed since September 11, 2001." J.A. 104 (quoting 10 U.S.C. § 101(a)(13)). DLA informed Mr. O'Farrell by email that he was not entitled to additional military leave pursuant to § 6323(b) because the Order "do[es] not state [that Mr. O'Farrell was] under contingency orders." J.A. 102. Subsequently, Mr. O'Farrell submitted an Office of Personnel Management ("OPM") Form 71, Request for Leave or Approved Ab-

sence, "[r]equest[ing] approval and use of [twenty-two] days . . . of additional military leave under provisions of . . . [§] 6323(b)." J.A. 100. DLA denied his request, stating that Mr. O'Farrell's "active duty is not in support of a contingency operation." J.A. 96; *see* J.A. 94–99.

DISCUSSION

This appeal concerns whether, under the proper statutory construction of § 6323(b), the MSPB erred in denying Mr. O'Farrell's request for twenty-two days of additional military leave. *See* Pet'r's Br. 14; Resp't's Br. 1. After articulating the applicable standard of review, we first assess whether the MSPB properly construed § 6323(b) and then assess whether Mr. O'Farrell is entitled to additional leave under the proper construction.

I. Standard of Review

We affirm an MSPB decision unless, inter alia, it constitutes "an abuse of discretion." 5 U.S.C. § 7703(c)(1). "The MSPB abuses its discretion when the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Tartaglia v. Dep't of Veterans Affairs*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (internal quotation marks and citation omitted). "We review the [MSPB]'s legal determinations, including its interpretation of a statute, de novo." *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015) (citation omitted).

II. The MSPB Misinterpreted 5 U.S.C. § 6323(b)

Without engaging in the appropriate statutory analysis, the MSPB summarily determined that § 6323(b) requires that "a specific contingency operation should be identified in military orders when an employee is activated under [§] 12301(d) in order for the employee to be entitled to [twenty-two] days of additional military leave under [§] 6323(b)." J.A. 8. The MSPB, however, failed to

assess what qualifies as "support" or as a "contingency operation" under the relevant statutory provisions. Therefore, we interpret § 6323(b) and § 101(a)(13) to determine the meaning of these respective terms, as well as whether these statutes require that the order calling the service member to active duty must identify the specific contingency operation.

We begin our statutory interpretation with the plain language of § 6323(b). *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). As an initial matter, the statute requires that the service member "perform[] full-time military service as a result of a call or order to active duty *in support of* a contingency operation." 5 U.S.C. § 6323(b)(2)(B) (emphasis added); it does not, however, specify the types of "support" that qualify. Therefore, we interpret "support" in accordance with its "ordinary, contemporary, common meaning," *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (internal quotation marks and citation omitted), which broadly encompasses "an act of helping a person or thing to hold firm or not to give way; provision of *assistance* or backing," *Support*, The Oxford English Dictionary (3d ed. 2012) (emphasis added), *available at* http://www.oed.com/view/Entry/ 194673; *see Support*, The New Oxford American Diction-ary (2005) ("To give *assistance* to, esp. financially; enable to function or act." (emphasis added)); *Support*, The American Heritage Dictionary (2000) ("To aid the cause, policy or interests of."). Contrary to the Government's assertions, *see* Resp't's Br. 22–23, § 6323(b) imposes no requirement that the service member provide direct, as opposed to indirect, support to the contingency operation.

Section 101(a)(13), in turn, defines what constitutes a "contingency operation" for purposes of § 6323(b). A

contingency operation must be a "military operation,"[4] 10 U.S.C. § 101(a)(13), and the military operations that qualify as contingency operations include, as relevant here, those that "result[] in the call or order to, or retention on, active duty of members of the uniformed services under [certain listed statutory provisions], or *any other* provision of law . . . *during* a national emergency declared by the President," *id.* § 101(a)(13)(B) (emphases added). Section 101(a)(13)(B) thus requires that service members be called to, or retained on, active duty  pursuant to a "provision of law . . . during a national emergency."  While § 101(a)(13)(B) lists specific statutory provisions under which a service member may be ordered to active duty, the subsection's use of the word "any" indicates that this list of statutory provisions is non-exhaustive and that "other provision[s] of law" should be interpreted broadly. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever

---

[4]    Neither § 101(a)(13) nor the remainder of Title 5 of the U.S. Code define "military operation."  In addition, the parties neither request that we interpret that term nor contend that the armed forces of the United States' actions in Afghanistan in conjunction with the national emergency arising from the terrorist attacks of September 11, 2001, are not related to a contingency operation. *See* 10 U.S.C. § 101(a)(13); Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 77 Fed. Reg. at 56,517; *cf.* Oral Arg. at 15:41–45, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2017-1223.mp3 (acknowledging that the armed forces "have been in open hostilities since at least 2001"). *See generally* Pet'r's Br.; Resp't's Br.  At the very least, however, a military operation by the armed forces of the United States includes engagement in open hostilities against the nation's enemies.

kind.'" (citation omitted)). Therefore, § 101(a)(13)(B) instructs that a service member may be called to active duty "in support of a contingency operation" pursuant to § 6323(b), even if the service member were ordered to active duty pursuant to a provision of law that is not explicitly listed in § 101(a)(13)(B).

We next consider § 6323(b) in the context of the overall statutory scheme. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). While 5 U.S.C. §§ 6321–6329c, the subchapter of Title 5 of the U.S. Code involving "Other Paid Leave," generally describes circumstances under which a service member may qualify for paid leave, none of these provisions inform our interpretation of "in support of" or "contingency operation." However, 5 U.S.C. §§ 5101–5949, the subpart of Title 5 of the U.S. Code involving "Pay and Allowances," specifies that a service member must have provided *direct* support for a contingency operation to qualify for certain benefits. *See, e.g.*, 5 U.S.C. § 5742(b)(2)(B)(ii)(I)(bb) (providing that an agency may pay transportation costs of a deceased employee when the employee, inter alia, died as a result of harm suffered in the performance of official duties "*in direct support of or directly related to a military operation, including a contingency operation (as defined in [§] 101(a)(13) . . . )* or an operation in response to an emergency declared by the President" (emphasis added)). Congress knew how to require direct support of contingency operations but declined to include such a qualifier in § 6323(b). *See Sebelius v. Cloer*, 569 U.S. 369, 378 (2013) ("We have long held that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks, brackets, and citation omitted)).

We also may look to the relevant regulatory scheme to inform our interpretation of § 6323(b). *See Bragdon v.*

*Abbott*, 524 U.S. 624, 642 (1998). While related statutory provisions contemplate the promulgation of regulations, *see* 5 U.S.C. § 6322(c) ("[OPM] may prescribe regulations for the administration of this section."); *id.* § 6324(b) (providing that "[t]he determination of whether an injury or illness resulted from the performance of duty shall be made under regulations prescribed by" relevant councils and secretaries), no relevant agency "has (under any other statutory authority) promulgated a formal rule setting forth its implementation of [§] 6323," *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1340 (Fed. Cir. 2003). The regulatory scheme thus does not aid our interpretation of the terms "in support of" or "contingency operation." However, it does illuminate whether a service member ordered to active duty must identify a specific contingency operation when requesting additional leave. Indeed, the sole relevant regulation identified by the court states that a service member "must be permitted, upon request, to use any . . . military leave under 5 U.S.C. [§] 6323 . . . , if appropriate, during . . . service." 5 C.F.R. § 353.208 (2016). The use of the mandatory term "must" indicates that OPM is required to provide service members with additional leave "upon request," *id.*; *see Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) (stating that "the word 'shall' usually connotes a requirement" and equating "*shall*" with "*must*"), as long as leave is "appropriate" under the requirements set forth in § 6323, 5 C.F.R. § 353.208. Moreover, contrary to the Government's assertions, *see* Resp't's Br. 13 (arguing that, to be entitled to additional leave pursuant to § 6323(b), a service member must "identify the military operation that their service supported" and "show how his or her service supported a military operation"), no regulation places requirements on the form of the service member's request, *see, e.g.*, 5 C.F.R. § 353.208.

We also may look to the legislative history to inform our interpretation of § 6323(b). *See Thunder Basin Coal*

*Co. v. Reich*, 510 U.S. 200, 207 (1994). By the 1960s, Congress grew concerned that service members increasingly were being called to active duty in response to "civil disturbances," requiring them to "take annual leave or go on leave without pay," and that this caused substantial hardship for "enlisted men, who in private life may earn substantially more than their pay as Guardsmen or reservists." S. Rep. No. 90-1443, at 4289 (1968). Congress thus amended § 6323 to provide additional leave to service members. *See* Pub. L. No. 90-588, § 2(a), 82 Stat. 1151, 1151–52 (1968). When Congress again amended § 6323 to provide additional leave for service members ordered to active duty in support of contingency operations, *see* National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 1113, 117 Stat. 1392, 1635 (2003) (adding the "in support of a contingency operation" language), it expressed concern that a service member serving "in a contingency operation *in support of our troops in Afghanistan or Iraq combat zones* happens to be left out" of certain benefits, 149 Cong. Rec. S12,582 (daily ed. Oct. 15, 2003) (statement of Sen. Lincoln) (emphasis added) (discussing tax benefits enacted contemporaneously with the amendments to § 6323). In addition, when Congress added a definition of "contingency operation" in § 101(a)(13) in 1991, it did so in response to, inter alia, its assessment that "[DOD] . . . was not sufficiently sensitive to the sacrifices made by reservists called or ordered to active duty *in connection with* the Persian Gulf conflict and by the families, employers, and communities of those reservists." National Defense Authorization Act for Fiscal Years 1992 and 1993, Pub L. No. 102-190, § 555(a)(1), 105 Stat. 1290, 1372 (1991) (emphasis added). This legislative history indicates that Congress continually updated § 6323 and § 101(a)(13) to provide for increasing numbers of service members to receive additional compensation in response to the changing nature of military conflicts.

As relevant here, these statutory provisions, regulations, and legislative history collectively instruct that under the current landscape: (1) "in support of" includes indirect assistance to a contingency operation, 5 U.S.C. § 6323(b)(2)(B); *see Support*, The Oxford English Dictionary (3d ed. 2012); *Support*, The New Oxford American Dictionary (2005); *Support*, The American Heritage Dictionary (2000); (2) "contingency operation" includes a military operation that results in service members being called to active duty under any provision of law during a national emergency, 10 U.S.C. § 101(a)(13); (3) upon request, a service member is entitled to additional leave as long as leave is "appropriate" under the requirements set forth in § 6323, 5 C.F.R. § 353.208; and (4) the service member's request for additional leave need not take any particular form or use any particular language, *see, e.g.*, *id.*[5]

### III. The MSPB Abused Its Discretion in Determining that Mr. O'Farrell Is Not Entitled to Additional Leave Under § 6323(b)

Applying its erroneous interpretation of § 6323(b), the MSPB determined that Mr. O'Farrell "failed to meet his burden of proving his rights under USERRA were violated when [DLA] denied him [twenty-two] days of additional leave under . . . § 6323(b)." J.A. 8. As discussed above, *see supra* Section II, the MSPB based its conclusion on its erroneous construction of § 6323(b), *see* J.A. 8, which constitutes an abuse of discretion, *see Tartaglia*, 858 F.3d at 1407–08. Under the proper construction of § 6323(b),

---

[5] Our holding today does not mean that all reservists called to active duty during a national emergency will be entitled to additional leave. Instead, they must demonstrate that their call to active duty was "in support of a contingency operation," as properly construed.

we conclude that Mr. O'Farrell is entitled to additional leave.

It is undisputed that the armed forces of the United States are engaged in military operations in Afghanistan in conjunction with a national emergency declared by the President that constitutes a contingency operation. *See supra* n.4. Instead, the parties dispute whether Mr. O'Farrell was called to active duty "in support of" that contingency operation. *See* Pet'r's Br. 26–27; Resp't's Br. 21–23. The record is clear that he was because Mr. O'Farrell replaced an NSWC attorney who directly supported the contingency operation through his deployment to Afghanistan. *See* J.A. 114, 175; *see also* Resp't's Br. 3 ("Mr. O'Farrell's service was required in order to replace a Navy civilian attorney who had been activated from reserve status and deployed to Afghanistan."). We also note that, in replacing that attorney, Mr. O'Farrell provided assistance to the Navy's warfighting capabilities while serving on active duty at NSWC. *See* J.A. 184–86 (describing NSWC's objectives and mission as, inter alia, "provid[ing] the fleet, program managers[,] and acquisition community with the objective assessment needed for the Navy to gauge the warfighting capability of ships and aircraft, assess warfare training[,] and analyze new defense systems" and as "[s]erv[ing] warfighters and program managers as the Navy's independent performance assessment agent throughout systems' lifecycles by gauging the Navy's warfighting capability of weapons and integrated combat systems, from unit to force level"), 190 (commending Mr. O'Farrell for "facilitat[ing the] smooth workflow and assured success in the legal aspects of NSWC['s] . . . mission"). Indeed, the Order calling Mr. O'Farrell to active duty pursuant to § 12301(d), which undoubtedly qualifies as a "provision of law," states that he will provide "operational *support*" for this mission. J.A. 114 (emphasis added).

The Government's counterarguments are unpersuasive.  First, the Government contends that, "[u]nlike other similarly situated Federal civilian employees ordered to active duty under [§] 12301(d), Mr. O'Farrell's orders did not indicate that the Navy considered his service to be in support of a contingency operation."  Resp't's Br. 22. *Compare* J.A. 114 (Mr. O'Farrell's Order), *with* J.A. 115 (ordering another service member to active duty in support of a "contingency," i.e., "Operation Enduring Freedom" (capitalization modified)).  However, the Government acknowledges that our inquiry is not limited to the text of an ambiguous order and that we may consider other relevant evidence as to whether Mr. O'Farrell was ordered to active duty "in support of a contingency operation," *see* Resp't's Br. 15 ("An employee's orders are an obvious starting point for the inquiry, but if it is not clear on their face how her active duty service supported a military operation related to a declared national emergency, the employee may present evidence demonstrating that the requirement was satisfied." (citation omitted)), and, as explained above, Mr. O'Farrell was called to active duty "in support of" a "contingency operation" pursuant to a "provision of law" and "during a national emergency," which is all the relevant statutory provisions require, *see supra* Section II.

Second, and relatedly, the Government asserts that "Mr. O'Farrell did not argue before the [MSPB] that his service was in support of a *specific* military operation connected to a declared national emergency," Resp't's Br. 17 (emphasis added), such that "he cannot do so on appeal," *id.* at 20 (citation omitted).  However, the relevant inquiry is whether Mr. O'Farrell was called to active duty "in support of a contingency operation," not whether he identified the *specific* contingency operation.  *See supra* Section II.  Moreover, before both DLA and the MSPB, Mr. O'Farrell argued that he was entitled to additional leave pursuant to § 6323(b) on the grounds that he was

called to active duty in support of a contingency operation during a national emergency declared by the President. *See* J.A. 104 (arguing before DLA that, "during a national emergency declared by the President" as required by § 101(a)(13), he was ordered to active duty pursuant to § 12301(d), which is a "provision of law" (citation omitted)), 322 (arguing before the MSPB that, "during the period during which [Mr. O'Farrell] was serving on active duty in support of the U.S. Navy, the U.S. Navy was engaged in the performance of military operations throughout the world, many of which were 'contingency operations'").

Third, the Government avers that Mr. O'Farrell provided only "loosely-connected 'indirect support'" and "the record does not show the necessary connection between Mr. O'Farrell's service and a military operation connected with a declared national emergency." Resp't's Br. 23. However, we concluded above that indirect support for contingency operations is sufficient under § 6323(b). *See supra* Section II. Moreover, although not necessary to our analysis, if there were any "interpretative doubt" as to whether § 6323(b) imposed the additional requirements sought by the Government, it would be "resolved in [Mr. O'Farrell]'s favor." *Kirkendall v. Dep't of the Army*, 479 F.3d 830, 846 (Fed. Cir. 2007) (en banc) (internal quotation marks and citation omitted); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991) ("[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." (citation omitted)). Thus, it would be particularly improper to read these additional requirements into the statute's plain language.

## CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive. Accordingly, the Final Decision of the Merit Systems Protection Board is

## REVERSED