# United States Court of Appeals for the Federal Circuit

---

**BRYAN ADAMS,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2020-1649

---

Petition for review of the Merit Systems Protection Board in No. DE-4324-19-0288-I-1.

---

Decided: July 2, 2021

---

BRIAN J. LAWLER, Pilot Law, P.C., San Diego, CA, for petitioner.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CLAUDIA BURKE, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.

---

Before MOORE, *Chief Judge*\*, REYNA and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Bryan Adams appeals a final decision of the Merit Systems Protection Board denying his request for differential pay for three separate periods of military service during which he performed duties in the Arizona Air National Guard. Because none of Mr. Adams's service meets the statutory requirements for differential pay, we affirm.

I

Mr. Adams worked as a human resources specialist with U.S. Customs and Border Patrol (the agency) and was also a member of the Arizona Air National Guard. From April to September 2018, Mr. Adams performed three periods of military service with the National Guard. Between April 11 and July 13, Mr. Adams was activated under 10 U.S.C. § 12301(d) to support a military personnel appropriation (MPA) tour in support of Twelfth Air Force. J.A. 199. Between July 18 and July 30, Mr. Adams was ordered to attend annual training under 32 U.S.C. § 502(a) at Davis-Montham Air Force Base. J.A. 196. And between July 28 and September 30, Mr. Adams was again activated under § 12301(d) to support an MPA tour in support of legal assistance. J.A. 203. Both of Mr. Adams's § 12301(d) orders state that they are "non-contingency" activation orders. J.A. 199, 203.

Under 5 U.S.C. § 5538(a), federal employees who are absent from civilian positions due to certain military responsibilities may qualify to receive the difference between their military pay and what they would have been paid in their civilian employment during the time of their absence.

---

\*     Chief Judge Kimberly A. Moore assumed the position of Chief Judge on May 22, 2021.

This entitlement is referred to as "differential pay." Here, Mr. Adams requested differential pay from the agency for each of his three periods of service. The agency denied his request because it determined that Mr. Adams's military service did not qualify for differential pay under the statute.

Mr. Adams appealed to the Merit Systems Protection Board (Board) alleging that the decision to deny differential pay violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (codified as amended at 38 U.S.C. §§ 4301–4335). An Administrative Judge issued an initial decision that the agency did not violate USERRA because Mr. Adams provided no evidence that his military service was a motivating factor in the denial of differential pay. *Adams v. Dep't of Homeland Sec.*, No. DE-4324-19-0288-I-1, 2020 WL 698369 (M.S.P.B. Feb. 4, 2020). Because Mr. Adams did not file a petition for review with the Board, this initial decision became final without further review.

Mr. Adams now appeals.

## II

We affirm a Board decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003). "We review the [Board]'s legal determinations, including its interpretation of a statute, de novo." *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1083 (Fed. Cir. 2018).

Generally, an employee making a USERRA claim under 38 U.S.C. § 4311 must show that (1) they were denied a benefit of employment, and (2) the employee's military service was "a substantial or motivating factor" in the

denial of such a benefit. *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (citation omitted). However, when the benefit in question is only available to members of the military, claimants do not need to show that their military service was a substantial or motivating factor. *See Butterbaugh v. Dep't of Just.*, 336 F.3d 1332, 1336 (Fed. Cir. 2003) ("[W]e agree with the Board that, in contrast to cases such as *Sheehan* . . . the question in this case is not whether Petitioners' military status was a substantial or motivating factor in the agency's action, for agencies only grant military leave to employees who are also military reservists."); *see also Maiers v. Dep't of Health & Hum. Servs.*, 524 F. App'x 618, 623 (Fed. Cir. 2013) ("In *Butterbaugh*, we determined that claimants need not show that their military service was a substantial motivating factor when the benefits at issue were only available to those in military service.").

Because differential pay is only available to members of the military, we agree with Mr. Adams that the Board erred in its legal analysis by requiring that he show that his military service was a motivating factor in the agency's decision to deny differential pay. In order to establish a USERRA violation, Mr. Adams was only required to show that he was denied a benefit of employment. We therefore consider whether Mr. Adams was entitled to differential pay as a benefit of employment under the statutory provisions.

### III

5 U.S.C. § 5538(a) states:

An employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to a call or order to active duty under . . . a provision of law referred to in section 101(a)(13)(B) of title 10 shall be entitled [to differential pay].

The provisions of law listed in 10 U.S.C. § 101(a)(13)(B) define what qualifies as a "contingency operation." Thus, for Mr. Adams to be entitled to differential pay, he must have served pursuant to a call to active duty that meets the statutory definition of contingency operation. We conclude that none of Mr. Adams's service qualifies as an active duty contingency operation.

### A

We first consider Mr. Adams's title 32 orders to perform annual training and conclude that Mr. Adams is not entitled to differential pay for this period of service because training does not qualify as "active duty" as required by 5 U.S.C. § 5538(a). Active duty is defined as "full-time duty in the active military service of the United States . . . [but] [s]uch term does not include full-time National Guard duty." 10 U.S.C. § 101(d)(1). As relevant here, full-time National Guard duty is defined as:

> [T]raining or other duty, other than inactive duty, performed by a member of the . . . Air National Guard of the United States in the member's status as a member of the National Guard of a State or territory . . . under section . . . 502 . . . of title 32 for which the member is entitled to pay from the United States or for which the member has waived pay from the United States.

*Id.* § 101(d)(5).

Mr. Adams was ordered to annual training under 32 U.S.C. § 502(a). Since training under § 502 of title 32 is explicitly included in the definition of full-time National Guard duty, and since full-time National Guard duty is explicitly excluded from the definition of active duty, Mr. Adams was not called to active duty during the period of service that he spent in training. Because only members of the military who are called to active duty are entitled to differential pay under 5 U.S.C. § 5538(a), Mr. Adams is not

entitled to differential pay for his time spent in annual training.

## B

We next consider Mr. Adams's title 10 activation orders to support MPA tours and conclude that Mr. Adams is not entitled to differential pay for these periods of service because his service did not qualify as a "contingency operation" as required by 5 U.S.C. § 5538(a). As relevant to this case, 10 U.S.C. § 101(a)(13)(B) defines the term "contingency operation" as:

> [A] military operation that . . . results in the call or order to, or retention on, active duty of members of the uniformed services under section 688, 12301(a), 12302, 12304, 12304a, 12305, or 12406 of this title, chapter 13 of this title, section [3713] of title 14, or any other provision of law during a war or during a national emergency declared by the President or Congress.

Mr. Adams was not called to duty under any enumerated section in the definition of contingency operation, and his orders expressly stated that they were "non-contingency" activation orders. Nevertheless, Mr. Adams argues that he was serving in a contingency operation because the statutory definition includes members of the military called to service under "any other provision of law" during a declared national emergency. Mr. Adams argues that he was called to duty under a provision of law, 10 U.S.C. § 12301(d), and that the United States has been in a continuous state of national emergency since September 11, 2001. *See* 84 Fed. Reg. 48,545 (declaration of the President continuing the national emergency for the year 2019–2020). Thus, Mr. Adams argues that every military reservist ordered to duty is performing a contingency operation so long as the national emergency continues.

We have previously rejected such an expansive reading of the definition of contingency operation. *See O'Farrell*, 882 F.3d at 1086 n.5 (explaining that not all reservists called to active duty during a national emergency are acting in support of a contingency operation). In *O'Farrell*, we considered 5 U.S.C. § 6323(b), which entitled military reservists to military leave benefits if they were called to active duty "in support of a contingency operation." There, we found that the Petitioner's activation orders under 10 U.S.C. § 12301(d) qualified for benefits because the Petitioner was called to active duty to replace a member of the Navy who had been deployed to Afghanistan, and we therefore reasoned that Petitioner was indirectly supporting the contingency operation in Afghanistan. *Id.* at 1087–88. We find no inconsistency between *O'Farrell* and the agency's decision to deny differential pay to Mr. Adams. The requirements to qualify for differential pay under § 5538(a) are stricter than those for entitlement to benefits under § 6323(b), because § 5538(a) does not entitle a claimant to benefits when they are activated "in support" of a contingency operation, only when they are directly called to serve in a contingency operation.[1] Moreover, unlike the Petitioner in *O'Farrell*, Mr. Adams has not alleged any similar connection between his service and the declared national emergency.

In determining the meaning of the statutory phrase "any other provision of law," we consider the context of the enumerated provisions that qualify as a contingency operation under the statutory definition and find that all of the identified statutes involve a connection to the declared national emergency. *See* 10 U.S.C. § 688(c) (authorizing the

---

[1]    Illustrative of the difference in the stringency of the statutes, here the agency awarded emergency military leave to Mr. Adams under § 6323(b)(2)(B), even while denying differential pay under § 5538(a). J.A. 342.

activation of retired military personnel to perform duties that "the Secretary considers necessary in the interests of national defense"); § 12301(a) (authorizing activation of reservists "[i]n time of war or of national emergency"); § 12302 (authorizing activation in the Ready Reserve "[i]n time of national emergency"); § 12304 (authorizing activation of reservists "when the President determines that it is necessary to augment the active forces"); § 12305 (authorizing the suspension of laws relating to promotion, retirement, or separation for a member of the military that "the President determines is essential to the national security of the United States"); § 12406 (authorizing activation of service members when the United States "is invaded or is in danger of invasion by a foreign nation"); Chapter 13 (categorizing provisions including authorization to call state militia into federal service during time of insurrection "to suppress the rebellion"); 14 U.S.C. § 3713 (authorizing activation "to aid in prevention of imminent, serious natural or manmade disaster, accident, catastrophe, act of terrorism, or transportation security incident"). By contrast, § 12301(d) authorizes the activation of reservists "at any time . . . with the consent of that member." Under the principle of ejusdem generis, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) (alteration in original) (quoting 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 47.17 (1991)). We find it implausible that Congress intended for the phrase "any other provision of law during a war or national emergency," to necessarily include § 12301(d) voluntary duty that was unconnected to the emergency at hand.

Our reading of § 5538(a) is consistent with the policy guidance from the Office of Personnel Management (OPM) on the matter. OPM guidance instructs that "qualifying active duty does not include voluntary active duty under

10 U.S.C. 12301(d)." *See OPM Policy Guidance Regarding Reservist Differential Under 5 U.S.C. § 5538* at 18 (available at https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/reservist-differential/policyguidance.pdf). The guidance also explains that "[t]he term 'contingency operation' means a military operation that is designated by the Secretary of Defense as an operation in which members of the armed forces are or may become involved in military actions, operations, or hostilities against an enemy of the United States or against an opposing military force." *Id.* at 22. Mr. Adams does not allege that he was ordered to perform such service.

We conclude that Mr. Adams's service supporting MPA tours under § 12301(d) was not a contingency operation. Therefore, Mr. Adams is not entitled to differential pay for these periods of service.

IV

Because none of Mr. Adams's service qualifies as an active duty contingency operation, as required by 5 U.S.C. § 5538(a), the agency properly denied differential pay. We affirm the decision of the Board.

**AFFIRMED**

No costs.