**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2026 MSPB 1**

Docket No. DC-4324-21-0052-I-4

**Michael Sopko,**

**Appellant,**

v.

**Department of Veterans Affairs,**

**Agency.**

January 22, 2026

Brian Lawler, Esquire, San Diego, California, for the appellant.

Christian Piatt, Esquire, Baltimore, Maryland, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**OPINION AND ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (codified as amended at 38 U.S.C. §§ 4301-4335). For the reasons discussed below, we GRANT the petition for review, REVERSE the initial decision as to the appellant's entitlement to differential pay under 5 U.S.C. § 5538(a), and ORDER corrective action under that provision. We otherwise AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant is an agency employee and a member of the U.S. Air Force Reserve. *Sopko v. Department of Veterans Affairs*, MSPB Docket No. DC-4324-21-0052-I-1, Initial Appeal File (IAF), Tab 6 at 7, Tab 8 at 17, 19. Pursuant to 10 U.S.C. § 12301(d), he was ordered to active duty to complete Officer Training School at Maxwell Air Force Base in Montgomery, Alabama, from August 25 until October 21, 2020. IAF, Tab 6 at 7-9.

¶3 Based on his active-duty service, the appellant requested that the agency pay him differential pay pursuant to 5 U.S.C. § 5538(a), provide him 22 work days of additional military leave under 5 U.S.C. § 6323(b)(2)(B), and allow him 5 days of excused absence upon his return to duty pursuant to a November 14, 2003 memorandum issued by then-President George W. Bush. IAF, Tab 1 at 9-11; *Sopko v. Department of Veterans Affairs*, MSPB Docket No. DC-4324-21-0052-I-4, Appeal File (I-4 AF), Tab 6 at 4-10. After the agency denied these requests, the appellant filed a Board appeal alleging that the denials violated USERRA. IAF, Tab 1 at 8-9, 11-12, Tab 8 at 28-31.

¶4 Following the appellant's withdrawal of his hearing request, the administrative judge issued an initial decision on the written record denying the appellant's request for corrective action. I-4 AF, Tab 11, Initial Decision (ID) at 1, 3, 16. As to the appellant's claims under 5 U.S.C. §§ 5538(a) and 6323(b), the administrative judge found that the appellant's service was not in support of a contingency operation under 10 U.S.C. § 101(a)(13) as necessary for differential pay and up to 22 days of leave. ID at 5, 10-14. The administrative judge further reasoned that the appellant was not entitled to the additional leave provided for under 5 U.S.C. § 6323(b) because he did not meet the statutory prerequisite of qualifying as an "employee" as defined under 5 U.S.C. § 2105. ID at 6-10. The administrative judge also concluded that, in any event, the benefit under section 6323(b) did not entitle an employee to additional leave but merely allowed him to use leave he had otherwise accrued. ID at 13. Finally, as to the

appellant's claim that he was entitled to 5 days of excused absence pursuant to President Bush's November 14, 2003 memorandum, the administrative judge found that the appellant did not qualify for this benefit because he did not serve in the Global War on Terrorism or in connection with any of the military operations identified in the memorandum, such as Operation Noble Eagle and Operation Enduring Freedom. ID at 15-16.

¶5    The appellant has filed a petition for review in which he disagrees with the administrative judge's conclusions that, as a matter of law, the appellant is not entitled to the benefits he seeks. Petition for Review (PFR) File, Tab 1 at 7-16. He also argues that, after the record closed below, he was awarded the Global War on Terrorism Service Medal. *Id.* at 15-16. He argues that this medal proves that his service supported the Global War on Terrorism and a contingency operation. *Id.* at 16. The agency has filed a response, and the appellant has filed a reply. PFR File, Tabs 3-4.

¶6    The appellant also filed a motion to stay proceedings on review for the U.S. Supreme Court's anticipated decision in *Feliciano v. Department of Transportation*. PFR File, Tab 5. After the Court issued its decision in that case, *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), he filed a motion to lift the stay of the proceedings, PFR File, Tab 6. Therefore, we need not address the appellant's motion.

## ANALYSIS

The appellant is entitled to differential pay pursuant to 5 U.S.C. § 5538(a).

¶7    Section 5538(a) of Title 5 "requires the [G]overnment to provide differential pay to a [F]ederal civilian employee reservist when the military orders him to active-duty service 'under . . . a provision of law referred to in [10 U.S.C. §] 101(a)(13)(B).'" *Feliciano*, 605 U.S. at 42 (quoting 5 U.S.C. § 5538(a)). Section 101(a)(13)(B), in turn, defines certain types of military operations as "contingency operation[s]," including a catchall category for those that result "in

the call or order to, or retention on, active duty . . . under . . . any other provision of law during a war or during a national emergency declared by the President or Congress." In its decision in *Feliciano*, which was issued after the initial decision in this case, the U.S. Supreme Court interpreted the term "during" in section 101(a)(13)(B) to mean "contemporaneous with" a national emergency. *Feliciano*, 605 U.S. at 44-45. The Court rejected the U.S. Court of Appeals for the Federal Circuit's determination in *Adams v. Department of Homeland Security*, 3 F.4th 1375, 1379-80 (Fed. Cir. 2021), *abrogated by Feliciano*, 605 U.S. at 43-56, that differential pay is contingent on "directly . . . serv[ing] in a contingency operation." Accordingly, to be entitled to differential pay under 5 U.S.C. § 5538(a), an appellant is only required to show that his active-duty service occurred at the same time as a national emergency.

¶8 In light of the *Feliciano* decision, which was not available to the administrative judge when he issued the initial decision, we reverse the administrative judge's finding that the appellant was not entitled to differential pay under 5 U.S.C. § 5538(a). Like Mr. Feliciano, the appellant was ordered to active duty under 10 U.S.C. § 12301(d). *Feliciano*, 605 U.S. at 43; IAF, Tab 6 at 7. The appellant's relevant period of service was from August 25 until October 21, 2020. IAF, Tab 6 at 7. This service occurred at the same time as a national emergency declared by the President. Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 85 Fed. Reg. 56467 (Sept. 10, 2020); Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 84 Fed. Reg. 48545 (Sept. 12, 2019). Because the appellant's active duty under 10 U.S.C. § 12301(d) to attend Officer Training School temporally coincided with a declared national emergency, he is entitled to differential pay pursuant to 5 U.S.C. § 5538(a). It is undisputed that the agency did not provide the appellant with differential pay, and thus he is entitled to corrective action under USERRA.

<u>The administrative judge correctly found that the appellant was not entitled to 22 days of military leave under 5 U.S.C. § 6323(b).</u>

¶9    Under 5 U.S.C. § 6323(b)(1), (2)(B), in relevant part, when an employee who is also a reservist "performs full-time military service as a result of a call or order to active duty in support of a contingency operation as defined in [10 U.S.C. § 101(a)(13)]," he is entitled, "during and because of such service," to up to an additional 22 paid workdays of leave per calendar year.  In this context, "support of" a contingency operation includes both direct and indirect support, such as backfilling for another individual who is deployed to active duty to directly support a contingency operation.  *O'Farrell v. Department of Defense*, 882 F.3d 1080, 1084-88 (Fed. Cir. 2018); *see Feliciano*, 605 U.S. at 46 (describing 5 U.S.C. § 6323(b)(2)(B) as requiring a "substantive connection" to a particular purpose because the phrase "during and because of" describes leave "both contemporaneous with and related to a reservist's active-duty service").

¶10    We agree with the administrative judge that the appellant's service was not directly or indirectly "in support" of a national emergency.  ID at 11-12.  On review, the appellant reasserts that attending Officer Training provides indirect support to a national emergency but does not point to any error in the administrative judge's reasoning.  PFR File, Tab 1 at 13-14; IAF, Tab 27 at 5-6.  As the administrative judge observed, to extrapolate that such training contributes to overall military readiness "is a bridge too far."  ID at 12.  Contrary to the accepted norms of statutory construction, the appellant's argument would render meaningless the requirement in 5 U.S.C. § 6323(b)(2)(B) that qualifying service be "in support of" a contingency operation under 10 U.S.C. § 101(a)(13).  *See Moulton v. Office of Personnel Management*, 2023 MSPB 26, ¶ 13 (explaining that the provisions of a statute should be read in harmony, leaving no provision inoperative, superfluous, redundant, or contradictory).

¶11    For the first time on review, the appellant presents evidence that, in August 2021, he was awarded the Global War on Terrorism Service Medal, which

he argues supports his claim that he indirectly supported the Global War on Terrorism. PFR File, Tab 1 at 15, Tab 4 at 21; IAF, Tab 20 at 30. He admits that he raised, and then withdrew, this argument below. PFR File, Tab 1 at 16; I-4 AF, Tab 6 at 9-10, 12, Tab 8 at 4.

¶12 The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016). Even if we were to consider the appellant's argument "new," it would not provide a basis for reversing the initial decision because it is not of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980). The appellant supports his argument with his own sworn statement that, in August 2021, he received the Global War on Terrorism Service Medal because of his graduation from Officer Training. PFR File, Tab 4 at 19. He also provides a June 2022 DD Form 214, Certificate of Release or Discharge from Active Duty, which reflects that he is in receipt of the Medal. *Id.* at 24. The form indicates that the appellant received the Medal but does not identify on what period of service it is based. *Id.*

¶13 The appellant states in his declaration that he received the Medal for his Officer Training graduation, and in turn relies on a printout from an Air Force portal, on which he asserted that it was his "understanding that graduation . . . entitled [him] to the . . . Medal." *Id.* at 20-21. He does not provide an explanation from the Air Force as to why he received the Medal or explain why he believes he received the Medal as a result of attending Officer Training.

¶14 Further, the appellant's statement is contradicted by a printout he provides on review from a U.S. Air Force website. The printout reflects that receipt of the Medal requires that the service member be "assigned, attached or mobilized to a unit participating in or serving in support of designated

operations," which are identified as Airport Security operations, Operation Noble Eagle, Operation Enduring Freedom, and Operation Iraqi Freedom. *Id.* at 26. The appellant does not allege that his Officer Training was connected to one of these operations. Nor does he explain how his Officer Training was consistent with examples of the type of support identified on the printout, such as "maintaining/loading weapons systems for combat missions, securing installations against terrorism, augmenting command posts or crisis action teams, and processing personnel for deployment in support of the Global War on Terrorism." *Id.* A Department of Defense Manual (DoDM) does, however, provide guidance on this matter. According to the DoDM, the Global War on Terrorism Support Medal's award criteria requires service on active duty for 30 consecutive days or 60 non-consecutive days and does not include initial accession training. DoDM 1348.33, Manual of Military Decorations and Awards: DOD Service Awards – Campaign, Expeditionary, and Service Medals, vol. 2, ¶ 4.7c. (Dec. 21, 2016). On September 11, 2022, the award criteria changed to a more stringent requirement—that the servicemember serve in a designated contingent operation. *Id.* Ultimately, because the appellant's claim is supported only by his own conclusory statement on an Air Force portal, and in fact is contradicted by the other evidence he provided on review, we accord his statement, although sworn, little weight. *See Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (identifying factors affecting the weight to be accorded to hearsay evidence, including the consistency of the declarant's accounts with other information in the case, internal consistency, and their consistency with each other). Accordingly, we agree with the administrative judge that the appellant has not proven that he is entitled to differential pay.[1]

---

[1] On review, the appellant argues that the administrative judge incorrectly found in the initial decision that military leave under 5 U.S.C. § 6323(b) is not additional leave and instead merely entitles the appellant to use leave to which he is otherwise entitled, including accrued annual leave and compensatory time. ID at 13; PFR File, Tab 1 at 14-15. The appellant also disagrees with the administrative judge's finding that he

<u>The administrative judge properly found that the appellant was not entitled to 5 days of excused absence upon his return to duty pursuant to a November 14, 2003 memorandum issued by then-President Bush.</u>

¶15    On review, the appellant again requests that the Board order the agency to provide him with 5 days of excused absence based on his 59 days in active duty pursuant to a November 14, 2003 memorandum by then-President Bush.  PFR File, Tab 1 at 16.  The administrative judge found that the appellant is not entitled to this benefit.  ID at 14-16.  We agree with the administrative judge.

¶16    The memorandum provides that civil servants who return to duty after being "called to active duty in the continuing Global War on Terrorism" be granted 5 days of "uncharged leave," "consistent with the provisions of Federal law."  Memorandum on Return of Activated Military Members to Federal Civilian Employment, 2 Pub. Papers 1543 (Nov. 14, 2003).  The Office of Personnel Management (OPM) provides guidance that employees serving "in support of" the Global War on Terrorism are entitled to these 5 days of excused absence "to aid in their readjustment to civilian life."  *See Fact Sheet:  5 Days of Excused Absence for Employees Returning from Active Military Duty*, https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/5-days-of-excused-absence-for-employees-returning-from-active-military-duty/ (last visited Jan. 20, 2026).  The Global War on Terrorism, which OPM identifies by its new name as Overseas Contingency Operations (OCO), includes Operation Noble Eagle, Operation Enduring Freedom, Operation Iraqi Freedom, Operation New Dawn, and any other operations "deemed to be part of the OCO."  *Id.*

---

was excepted from the definition of "employee" under 5 U.S.C. § 2105, as necessary to qualify for leave under 5 U.S.C. § 6323(b), because he was serving "on active duty for training" during the service period at issue.  ID at 6, 10; PFR File, Tab 1 at 8-9.  Because we agree with the administrative judge that the appellant is not entitled to leave under 5 U.S.C. § 6323(b) due to the nature of his service, we do not reach these alternative bases on which the administrative judge denied corrective action.

**¶17** We agree with the administrative judge that the appellant has not met his burden to prove that he is entitled to this benefit. ID at 15-16. Although the appellant was in training for 59 days from August 25 through October 21, 2020, he did not serve in an identified operation and does not claim that his training was deemed to be part of the Global War on Terrorism. ID at 16. Also, as we have already discussed above, the appellant has not shown that his service was "in support of" the Global War on Terrorism. Finally, the appellant has not alleged that he engaged in the type of service that would require readjustment to civilian life. Rather, the appellant was in training for his entire service.

**¶18** Accordingly, we reverse the administrative judge's initial decision as to his finding that the appellant was not entitled to differential pay pursuant to 5 U.S.C. § 5538(a) and affirm the remainder of the initial decision.

## ORDER

**¶19** We ORDER the agency to pay the appellant the appropriate amount of differential pay pursuant to 5 U.S.C. § 5538(a) for the period from August 25 through October 21, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 60 days after the date of this decision.

**¶20** We also ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. We ORDER the appellant to provide all necessary information the agency requests to help it carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

**¶21** No later than 30 days after the agency tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

should contain specific reasons why the appellant believes the agency has not fully carried out the Board's Order and should include the dates and results of any communications with the agency. *See* 5 C.F.R. § 1201.182(a).

¶22 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency must timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶23 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

<u>NOTICE TO THE APPELLANT REGARDING</u>
<u>YOUR RIGHT TO REQUEST</u>
<u>ATTORNEY FEES AND COSTS</u>

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

NOTICE OF APPEAL RIGHTS[2]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[2] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[3] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[3] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


*Gina K. Grippando*
Gina K. Grippando
Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.