# United States Court of Appeals for the Federal Circuit

---

**JOHN C. KLUGE,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2021-1787

---

Petition for review of the Merit Systems Protection Board in No. DC-4324-20-0246-I-1.

---

Decided:  February 22, 2023

---

JAMES RENNE, Arlington, VA, argued for petitioner.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR.

---

Before DYK, TARANTO, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

John Kluge appeals from decisions of the Merit Systems Protection Board denying class certification, dismissing the Office of Personnel Management as a respondent, and finding that his former employer, the Department of Homeland Security, owed him differential pay in the amount of $274.37 plus interest under 5 U.S.C. § 5538. We affirm.

## I.    BACKGROUND

Mr. Kluge, a commissioned officer in the United States Army Reserve and a civilian employee of the Department of Homeland Security ("DHS"), was ordered to report to active duty in January 2011 in support of a contingency operation, Operation Enduring Freedom. J.A. 223; Pet'r's Br. 8–10. He was ordered to active duty under 10 U.S.C. § 12301(d), which provides for voluntary active duty of reservists. J.A. 223. Because of his service, he was absent from his DHS job from January 15 to July 30, 2011. J.A. 225; Pet'r's Br. 9.

For the first few weeks of this period, Mr. Kluge was on paid military leave from his job at DHS. Pet'r's Br. 10. From February 27 until July 30, 2011, Mr. Kluge was on unpaid leave. *Id.*; J.A. 465. DHS did not pay him for any of those days except for the July 4 holiday. Pet'r's Br. 10 n.8; J.A. 465.

In 2019, Mr. Kluge filed an appeal before the Board, seeking to recover differential pay under 5 U.S.C. § 5538 for himself and similarly situated service members employed by the federal government. J.A. 43–60. He named the Office of Personnel Management ("OPM") as the respondent in that appeal. J.A. 43.

The administrative judge assigned to Mr. Kluge's appeal denied class certification and substituted DHS for OPM as the respondent. J.A. 6. DHS and Mr. Kluge then stipulated that he was eligible for differential pay. J.A. 464. The administrative judge determined that DHS owed

Mr. Kluge $274.37 plus interest. J.A. 15–20. The administrative judge's decision became the Board's final decision under 5 C.F.R. § 1201.113.

Mr. Kluge appeals from that final decision. We have jurisdiction to consider his appeal under 28 U.S.C. § 1295(a)(9).

## II.    DISCUSSION

Mr. Kluge raises three issues on appeal. First, he asserts that the administrative judge abused her discretion in denying class certification. Pet'r's Br. 16–17. Second, he argues that the administrative judge erred in dismissing OPM as a party. Pet'r's Br. 16. Finally, he contends that the administrative judge miscalculated the amount of differential pay he is owed. Pet'r's Br. 17. We address each of these issues in turn.

## A.  Denial of Class Certification

Before the Board, Mr. Kluge alleged that federal agencies improperly denied differential pay to him and a class of potentially over 3,000 reservists employed by the federal government across all agencies who may have been on voluntary active duty in support of a contingency operation under 10 U.S.C. § 12301(d). J.A. 57–59, 206–17. He alleged that all federal civilian employers improperly denied reservists differential pay by following OPM guidance, first promulgated in December 2009, that states that "voluntary active duty under 10 U.S.C. [§] 12301(d)" does not qualify for differential pay. J.A. 55–56; J.A. 478, 495.

The administrative judge denied class certification. J.A. 6. She first found that certification of the class would implicate the privacy rights of potential class members "as certification of the class would reveal to all class members individual employees pay information and potentially other Privacy Act protected information." J.A. 5. She also found that the putative class lacked commonality because the class would come from various government agencies,

but Mr. Kluge had not alleged that all agencies had acted in the same manner or for the same reasons. *Id.* She further found that identification of class members would require detailed analysis of each potential member's employment and deployment records—records spanning over a decade. *Id.* Finally, she addressed Mr. Kluge's concern about judicial efficiency, noting that the Board has heard individual claims similar to the claim posed by Mr. Kluge since 2015 and has not suffered a deluge of cases. J.A. 5–6.

On appeal, Mr. Kluge argues that the administrative judge abused her discretion in denying class certification because certification of a class is the only fair and efficient way to address OPM's allegedly incorrect guidance. Pet'r's Br. 25–37. He argues that the administrative judge's factual findings regarding privacy concerns, the lack of commonality, the inefficiency of identifying class membership, and the unlikely possibility of opening the floodgates of litigation before the Board are incorrect. *Id.* Finally, he argues that the administrative judge erred by not addressing all the factors for class certification named in Federal Rule of Civil Procedure 23 and by considering privacy, which is not identified as a factor in Rule 23 or in other pertinent statutes or regulations. *Id.* at 25.

We set aside Board decisions only if they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also* 38 U.S.C. § 4324(d)(1) (establishing our ability to review the Board's Uniformed Services Employment and Reemployment Rights Act decisions in accordance with 5 U.S.C. § 7703). We review the Board's denial of class certification for abuse of discretion. *Certain Former CSA Emps. v. Dep't of Health & Hum. Servs.*, 762 F.2d 978, 986 (Fed. Cir. 1985). The Board "abuses its discretion when the decision is based on an erroneous interpretation

of the law, [based] on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *O'Farrell v. Dep't of Def.*, 882 F.3d 1080, 1083 (Fed. Cir. 2018) (quoting *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1407–08 (Fed. Cir. 2017) (internal quotation marks omitted)).

We conclude that the administrative judge did not abuse her discretion in denying class certification. The administrative judge did not err by not considering all criteria in Rule 23 or by considering criteria not specifically listed in Rule 23. Mr. Kluge has not shown that the administrative judge erred in finding that putative class members lack commonality or that identifying class members and adjudicating their claims as a class would not be a fairer or more efficient way to proceed. Although we disagree with the administrative judge's finding that certification of the class would require revealing all class member's private pay information to all other class members, that error does not compel us to reverse the denial of class certification. We further explain each of these conclusions below.

i.      Federal Rule of Civil Procedure 23

As an initial matter, the Board, unlike district courts, is not bound by Federal Rule of Civil Procedure 23 in determining whether to grant or deny class certification. *Compare* 5 C.F.R. § 1201.27(c), *with Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960–61 (2021) ("As we have repeatedly explained, a court has an obligation before certifying a class to 'determin[e] that Rule 23 is satisfied, even when that requires inquiry into the merits.'" (alteration in original) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). Rather, 5 C.F.R. § 1201.27(c) instructs that the applicable provisions of the Federal Rules of Civil Procedure may "guide[] but not control[]" the administrative judge's decision. And under 5 C.F.R. § 1201.27(a), an administrative judge should "hear the case as a class appeal if . . . she finds that a class appeal is the

fairest and most efficient way to adjudicate the appeal," among other requirements. Thus, we reject Mr. Kluge's argument that the administrative judge was required to address any factors identified in Rule 23 or was constrained to only considering those factors.

### ii.    Commonality

The administrative judge did not err in finding a lack of commonality. Mr. Kluge identifies the allegedly incorrect OPM guidance statement that "qualifying active duty does not include voluntary active duty under 10 U.S.C. [§] 12031(d)" as the unifying legal issue. Pet'r's Br. 29. He asserts that all federal employers uniformly adhered to the OPM guidance. *Id.*

The evidence Mr. Kluge presents on appeal of this alleged universal denial of differential pay to reservists who participated in voluntary active duty under 10 U.S.C. § 12301(d) are statements that the government made in a parallel case before the United States District Court for the District of Columbia.[1] Pet'r's Reply Br. 6–7. These statements are:

> OPM's policy guidance, which is directed to and relied upon by the Federal agencies that must make the payments to qualifying employees, has been updated four times . . . but none of the revisions have altered the 2009 definition of "qualifying active duty."

J.A. 571; *see also* J.A. 572, 575, and

---

[1]    This parallel litigation has since been transferred to the United States Court of Federal Claims. Order Granting Plaintiff's Motion to Transfer, *Kluge v. United States*, No. 1:19-cv-02618 (D.D.C. Aug. 24, 2021), ECF No. 51.

> [L]egal consequences clearly flowed from the decision, which was included in OPM's Policy Guidance Regarding Reservist Differential Under 5 U.S.C. [§] 5538, and that instructed federal agencies on how to apply the differential pay statute, and thus affected the circumstances under which federal employees could qualify for payments under the statute.

J.A. 573, 574, 576; Pet'r's Reply Br. 6–7. Mr. Kluge asks us to take judicial notice of these statements, which he characterizes as government admissions. Pet'r's Reply Br. 6–7.

We have already partially decided the issue of whether to take judicial notice of these statements. Order, *Kluge v. Dep't of Homeland Sec.*, No. 21-1787 (Fed. Cir. Oct. 21, 2021), ECF No. 30. After Mr. Kluge filed a motion to take judicial notice of the filings containing these statements, we explained that we "may take judicial notice of the fact that these pleadings were filed at the district court by the government." *Id.* But "[t]he relevance of such material . . . will be left to the merits panel." *Id.*

We determine that the scant evidence provided by these statements does not show any error in the administrative judge's finding that the proposed class lacks commonality. Mr. Kluge's allegation that all federal agencies followed OPM guidance is undercut by DHS's decision not to follow the OPM guidance in Mr. Kluge's case. After the administrative judge denied class certification, DHS agreed that Mr. Kluge was eligible for differential pay. J.A. 464. And, as the administrative judge noted, "OPM's guidance is just that, guidance." J.A. 15. It is not binding on DHS or any of the other agencies that might have employed a putative class member. Out of every member of the putative class, we only have information as to Mr. Kluge, and his case lacks the very feature—his employing agency adhering to OPM guidance—he asserts is common to the class. The government's statements in parallel litigation

that federal agencies relied on the OPM guidance and that the guidance affected the circumstances under which federal employees could qualify for payments cannot surmount the contradictory evidence that DHS did not follow OPM's guidance in Mr. Kluge's case.

We conclude that Mr. Kluge has not identified any error in the administrative judge's determination that the putative class lacks commonality.

### iii.    Efficiency

Next, we reject Mr. Kluge's argument that the administrative judge erred in finding that it would not be efficient to determine class membership. The administrative judge explained that identifying all federally employed reservists and reviewing their employment and deployment records to determine if they qualified for a differential payment that they were not paid would not be fairer or more efficient than individual adjudication. J.A. 5. Mr. Kluge asserts that the "inefficient and unproductive" method of identifying class members addressed by the administrative judge is not a necessary or reasonable approach. Pet'r's Br. 31. He asserts that the Department of Defense keeps all relevant deployment information in its Defense Finance and Accounting Service databases and that databases of civilian payroll records are kept by either OPM, the Department of Defense, or the National Finance Center. *Id.* at 31–32. He asserts that it would be "relatively simple for the Government" to determine class membership by comparing these databases. *Id.* at 32.

We do not find this argument persuasive. Mr. Kluge merely speculates that all required information is stored in easily accessible central databases and that it would be relatively simple to use those databases to determine class membership. Indeed, OPM told the administrative judge that it did not have any civilian pay records for Mr. Kluge— those records were ultimately obtained from his employer, DHS. J.A. 116, 464. Contrary to Mr. Kluge's assertion, it

appears that individual pay records would have to be collected from each putative class member's federal employer. Mr. Kluge provided no evidence that those records would be in a format that is easily compared to military records. Thus, we conclude that the administrative judge did not err in finding that a class action would not be fairer or more efficient.

### iv.    Privacy

Next, we consider the administrative judge's finding that certification of the class would require revealing the private pay information of all class members to all other class members. J.A. 5. We conclude this finding is unsupported. We recognize that class members' private information may need to be shared with class counsel.[2] But we are aware of no reason why class members' private information would need to be shared with other class members.

However, that erroneous finding, alone, does not convince us that the administrative judge abused her discretion in denying class certification. Even if there were no privacy concerns implicating class formation, a conclusion that we do not need to reach, the administrative judge was justified in denying class certification based solely on her findings that the putative class would lack commonality and that identification of class membership would not be

---

[2]    In finding that the administrative judge's privacy concerns are unsupported, we do not go so far as to agree with Mr. Kluge that potential class members' information could be kept entirely in the control of the government. *See* Pet'r's Br. 26–27. We do not see how a class could be adequately represented by an attorney with no access to class members' information. Potential class members' military records and civilian pay records would have to be produced at least to class counsel if a class were certified.

the fairest and most efficient way to proceed.  *See* 5 C.F.R. § 1201.27(a).

We do not go so far as to hold that class adjudication of claims for differential pay under 5 U.S.C. § 5538 will never be the fairest and most efficient way to proceed.  We conclude only that the administrative judge did not abuse her discretion in finding that the broad class proposed by Mr. Kluge may not be the fairest and most efficient way to proceed as required by 5 C.F.R. § 1201.27(a).

## B.  Dismissal of OPM

The administrative judge found that DHS, rather than OPM, was the proper party to respond to Mr. Kluge's differential pay claim because DHS was Mr. Kluge's employing agency and had access to his employment records.  J.A. 6.  Mr. Kluge asserts that the administrative judge erred in substituting DHS for OPM because he has a private right of action against OPM under 38 U.S.C. § 4324.  Pet'r's Br. 19–25.  We review the statutory interpretation issues raised by Mr. Kluge de novo.  *See Butterbaugh v. Dep't of Just.*, 336 F.3d 1332, 1336 (Fed. Cir. 2003).  He argues that by dismissing OPM, the administrative judge denied him the opportunity to seek remediation of OPM's allegedly incorrect guidance.  Pet'r's Br. 22, 24.  We disagree.

Section 4324 does not provide Mr. Kluge with a right of action against OPM in this case.  Section 4324(b) provides, in relevant part, that a "person may submit a complaint against a Federal executive agency or the Office of Personnel Management under this subchapter directly to the Merit Systems Protection Board."  The Board "shall adjudicate any complaint brought before the Board pursuant to subsection . . . (b)."  38 U.S.C. § 4324(c)(1).  And "[i]f the Board determines that a Federal executive agency or the Office of Personnel Management has not complied with the provisions of this chapter relating to the employment or reemployment of a person by the agency, the Board shall enter an order requiring the agency or Office to comply

with such provisions and to compensate such person for any loss of wages or benefits suffered by such person by reason of such lack of compliance." 38 U.S.C. § 4324(c)(2). But § 4324 does not, as Mr. Kluge implies, support an interpretation that a claimant may sustain a claim against OPM for differential pay that should be properly paid by a different agency. Congress separately identified OPM to indicate that a claimant can proceed against OPM "as an employer like any Federal agency" or "to assure the execution of other OPM duties, for example, its duties on behalf of employees of the Federal Bureau of Investigation, the Central Intelligence Agency, and other agencies under section 4315(e)." S. Rep. No. 104-371, at 30–31 (1996). Mr. Kluge does not allege that he was employed by OPM and does not seek to assure the execution of any other OPM duties. J.A. 43–60. Rather, he seeks to recover differential pay that 5 U.S.C. § 5538(c)(1) indicates shall be paid by his "employing agency," DHS. Section 4324 does not permit him to recover differential pay owed by DHS from OPM.

Mr. Kluge argues that he must be permitted to maintain an action against OPM to overturn OPM's guidance, which states that "qualifying active duty does not include voluntary active duty under 10 U.S.C. [§] 12301(d)." Pet'r's Br. 21–22; J.A. 495. He argues that DHS failed to pay his differential pay because it was following the OPM guidance and that he must be allowed to maintain a suit against OPM because its guidance was followed. Pet'r's Br. 22. Mr. Kluge's argument is misplaced, as the contested sentence of the guidance was not used to deny Mr. Kluge differential pay. *See* J.A. 464. Rather, DHS agreed with Mr. Kluge that he was owed differential pay. *Id.* Mr. Kluge asserts that he was constructively denied differential pay as it was not automatically provided to him but, rather, was only given to him after he asked for it in litigation approximately ten years after his active duty. Pet'r's Reply Br. 13–18. But we cannot say here that DHS ever denied Mr. Kluge differential pay, constructively or otherwise. Mr.

Kluge asserts, without any evidence, that DHS would have denied any request made prior to filing a lawsuit. *Id.* at 17. But he does not assert that he ever raised the issue with DHS before appealing to the Board.[3]  Even more tenuous than Mr. Kluge's assertion that DHS would have denied any request made outside of litigation is his assertion that the reason for that hypothetical denial would have been the OPM guidance.  There are simply no plausible allegations that Mr. Kluge, or anyone else, was ever denied differential pay due to the OPM guidance.

We conclude that Mr. Kluge has not shown any legal error or other abuse of discretion in the administrative judge's substitution of DHS for OPM and dismissal of OPM.

### C. Differential Pay Calculation

Finally, Mr. Kluge argues that the administrative judge erred in calculating the differential pay he is owed as $274.37 plus interest.  Pet'r's Br. 37–40; Pet'r's Reply Br. 26–30; *see* J.A. 20.  He maintains that he is entitled to $17,166.30 plus interest.  Pet'r's Reply Br. 29; *see* J.A. 408 (showing Mr. Kluge's calculation).  We disagree.

---

[3]    We do not hold that it is proper for an agency to wait until it receives a request before paying differential pay.  Indeed, 5 U.S.C. § 5538(c)(1)–(3) states that the employing agency should pay differential pay "to the extent practicable, at the same time and in the same manner as would basic pay if such employee's civilian employment had not been interrupted."  But, here, there is no indication that DHS's failure to pay Mr. Kluge's differential pay "at the same time and in the same manner as [it] would [pay] basic pay if such employee's civilian employment had not been interrupted," *id.* § 5538(c)(3), was due to the challenged OPM guidance.

Mr. Kluge and DHS agree to certain basic facts underlying the differential-pay calculation, although they disagree as to the computation method. Both parties agreed that Mr. Kluge is entitled to a reservist differential under 5 U.S.C. § 5538 for the period of February 27 to July 30, 2011. J.A. 12; J.A. 464. They agree that Mr. Kluge received his civilian pay for the Fourth of July holiday but was otherwise on leave-without-pay status for this period. J.A. 12; J.A. 465; Pet'r's Br. 10 n.8. They agree that, had he not been deployed, Mr. Kluge would have earned $4,704.80 per biweekly pay period, or $470.48 per eight-hour workday, in his civilian DHS job. J.A. 12; J.A. 464. Unlike his civilian pay, Mr. Kluge's military pay was paid monthly. In February, the military paid him $11,630.74. J.A. 11. In each of March, April, May, and June, the military paid him $10,169.94. *Id.* In July, the military paid him $9,994.94. *Id.*

OPM's guidance provides a method for calculating differential pay, J.A. 483–88, but the administrative judge rejected that method as unnecessarily complicated and unfair to military service members because it excludes holidays for which civilian employees are paid even though they do not have to work. J.A. 16. She developed her own calculation method for comparing bi-weekly civilian pay to monthly military pay on a pay-period basis. First, she converted monthly military pay to a bi-weekly equivalent by multiplying each month's military pay by 12 to convert it to an annual amount, and then dividing by 26, the number of pay periods in pay year 2011. J.A. 17. She then converted the calculated bi-weekly military pay to a daily military pay amount by dividing by 10, the number of workdays in the civilian bi-weekly pay period.[4] *Id.* The

---

[4] Alternatively, the same calculation can be reached "by dividing the bi-weekly comparative pay by 80, the

results of these conversions are summarized in the table below:

| Month | Monthly Military Pay | Calculated Bi-Weekly Military Pay | Calculated Daily Military Pay |
|---|---|---|---|
| February | $11,630.74 | $5,368.03 | $536.80 |
| March | $10,169.94 | $4,693.81 | $469.38 |
| April | $10,169.94 | $4,693.81 | $469.38 |
| May | $10,169.94 | $4,693.81 | $469.38 |
| June | $10,169.94 | $4,693.81 | $469.38 |
| July | $9,994.94 | $4,613.05 | $461.30 |

J.A. 16–20.

The administrative judge used these calculated daily military pay rates to determine the pay Mr. Kluge received from the military during each bi-weekly civilian pay period, some of which extend across two months. For example, the first pay period at issue began on February 27, 2011, and ended on March 12, 2011. It included one civilian workday in February (February 28) and nine civilian workdays in March. J.A. 17–18. For that pay period, the administrative judge determined that Mr. Kluge's military pay was a single day at the calculated daily military pay rate for February and nine days at the calculated daily military pay rate for March: ($536.80×1)+($469.38×9), yielding a total

---

number of hours in a bi-weekly period, [and] the daily rate was calculated multiplying by 8, the number of hours in a workday." J.A. 17.

calculated military pay for that pay period of $4,761.23. J.A. 18. The results of the administrative judge's calculations are summarized below:

| Pay Period | Dates | Calculated Military Pay | Civilian Pay | Calculated Pay Differential |
|---|---|---|---|---|
| 5 | 2/27–3/12 | $4,761.23 | $4,704.80 | None |
| 6 | 3/13–3/26 | $4,693.81 | $4,704.80 | $10.99 |
| 7 | 3/27–4/9 | $4,693.81 | $4,704.80 | $10.99 |
| 8 | 4/10–4/23 | $4,693.81 | $4,704.80 | $10.99 |
| 9 | 4/24–5/7 | $4,693.81 | $4,704.80 | $10.99 |
| 10 | 5/8–5/21 | $4,693.81 | $4,704.80 | $10.99 |
| 11 | 5/22–6/4 | $4,693.81 | $4,704.80 | $10.99 |
| 12 | 6/5–6/18 | $4,693.81 | $4,704.80 | $10.99 |
| 13 | 6/19–7/2 | $4,684.73 | $4,704.80 | $20.07 |

16                                          KLUGE v. DHS

| Pay Period | Dates | Calculated Military Pay | Civilian Pay | Calculated Pay Differential |
|---|---|---|---|---|
| 14 | 7/3–7/16 | $4,151.70 | $4,237.02 [5] | $85.62 [6] |
| 15 | 7/17–7/30 | $4,613.05 | $4,704.80 | $91.75 |

J.A. 16–20.  The administrative judge concluded that Mr. Kluge was owed differential pay totaling $274.37 plus interest.  J.A. 20.

---

[5]    Mr. Kluge's civilian pay is lower for pay period 14 because DHS paid him $470.48 for the Fourth of July federal holiday.  J.A. 20.  We note that there appears to be an error of approximately three dollars in the administrative judge's calculation of the civilian pay Mr. Kluge would have earned during this pay period but for his military service. We calculate that Mr. Kluge would have received $4,234.32 in civilian pay for that pay period, calculated by subtracting his $470.48 holiday pay from his $4,704.80 civilian biweekly pay.  The administrative judge calculated that he would have received $4,237.02.  As this error is in Mr. Kluge's favor and the government does not appeal the administrative judge's calculation, we will not find that Mr. Kluge's differential pay award should be decreased.

[6]    There also appears to be an error of 30 cents in the administrative judge's calculation of differential pay for pay period 14.  While the administrative judge calculated that Mr. Kluge was entitled to $85.62 in differential pay, if we assume that his civilian biweekly pay would have been $4,237.02, then he was entitled to $85.32 in differential pay.  As this error is also in Mr. Kluge's favor, we will not find that the amount of differential pay awarded to him should be decreased.

Mr. Kluge disagrees. He asserts that he is owed $17,166.30 plus interest or, in the alternative, three times that amount. Pet'r's Br. 37–39; Pet'r's Reply Br. 29. He argues that the administrative judge failed to consider the different number of workdays that he was expected to work while on active duty in the military versus at a civilian job and that a military job requires 24-hour accountability. Pet'r's Br. 37–39. To account for the fact that a reservist on active duty is expected to work seven days a week (fourteen days over a two-week period), while they would only work five days at their civilian job (ten days over a two-week period), Mr. Kluge would calculate his daily military pay rate by dividing his monthly military pay by the number of days in that month. J.A. 407. Thus, for March, Mr. Kluge would find that he was paid $328.06[7] per day ($10,169.94 divided by 31, the number of days in March), rather than $469.38 as the administrative judge found. *Compare* J.A. 18, *with* J.A. 407–08. By calculating daily military pay in this manner, Mr. Kluge divides his monthly military pay over all days, including weekends and holidays, equally. He then calculates differential pay by comparing the military pay accrued only for the days he would have been working in his civilian employment to the total civilian pay he would have received had he not been on active duty. J.A. 408. For the first time on appeal, he goes even further, arguing that differential pay should be calculated on an hourly basis rather than a daily basis to

---

[7] We note that Mr. Kluge's calculations, provided on J.A. 408, include some mathematical errors. For example, Mr. Kluge's calculation appears to use the incorrect number of days for the month of February and includes differential pay for the period from July 31 to August 12, even though his active-duty service ended on July 30. *See* J.A. 408; J.A. 225. Throughout this opinion, when we describe the calculation Mr. Kluge proposes, we attempt to follow the method he describes without reproducing the errors.

account for the fact that while on active duty he was accountable to his commander at all hours—effectively a 24-hour workday.  Pet'r's Br. 39.  He therefore asks, in the alternative, for his differential pay calculation ($17,166.30 plus interest) to be multiplied by three to account for the disparity between the 24-hour military workday and the 8-hour civilian workday.  *Id.*

We may set aside the administrative judge's differential pay calculation only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  The issue here is whether the administrative judge's calculation method complies with the statute governing differential pay, 5 U.S.C. § 5538.

We find Mr. Kluge's arguments regarding the calculation of differential pay unpersuasive because his proposed method is contrary to 5 U.S.C. § 5538.  Section 5538 provides that:

(a)  An employee who is absent from a position of employment with the Federal Government in order to perform active duty in the uniformed services pursuant to a call or order to active duty under section 12304b of title 10 or a provision of law referred to in section 101(a)(13)(B) of title 10 shall be entitled, while serving on active duty, to receive, *for each pay period* described in subsection (b), an amount equal to the amount by which--

(1)  the amount of basic pay which would otherwise have been payable to such employee *for such pay period* if such employee's civilian employment with the Government had not been interrupted by that service, exceeds (if at all)

> (2)  the amount of pay and allowances which (as determined under subsection (d))--
>
>> (A) is payable to such employee for that service; and
>>
>> (B) is *allocable to such pay period*.

5 U.S.C. § 5538 (emphases added). The statute specifies that differential pay should be calculated by determining the difference between civilian pay *for a pay period* and the military pay *allocable to that pay period*. Mr. Kluge asks for differential pay to be calculated on a per day (or per hour) basis rather than on the per pay period basis required by the statute.

We also reject Mr. Kluge's argument that the administrative judge's differential pay calculation is contrary to our decision in *Butterbaugh*. Pet'r's Br. 37–40. In *Butterbaugh*, we addressed a different statute, 5 U.S.C. § 6323(a)(1), under which federal employees are granted up to "15 days" of paid leave to attend reserve or National Guard training. 336 F.3d at 1333. We held that federal agencies' practice of counting every day of training, including weekends and holidays, against their employees' allotted military leave violated the statute. We held that "the 'days' that section 6323(a)(1) refers to are *leave* days, not 'training days' or 'reserve duty days.'" *Id.* at 1337. We explained that, generally, "employees are not accountable to their employers for time they are not required to work," and federal employees did not need to expend their military leave for days on which they were not scheduled to work for their federal agency employer. *Id.* *Butterbaugh* does not help Mr. Kluge because § 5538, unlike § 6323(a)(1), specifies that differential pay should be calculated and paid on a per pay period basis, not on a per day basis. *Butterbaugh*'s analysis of the word "day" in § 6323(a)(1) is simply irrelevant to the differential pay calculation under § 5538.

We do not hold that the administrative judge's calculation method is the best or only way to calculate differential pay under § 5538. We only hold that Mr. Kluge has failed to show that the administrative judge violated § 5538 or otherwise abused her discretion in calculating the differential pay owed in this case.

## III.　Conclusion

We have considered Mr. Kluge's other arguments and find them unavailing. For the foregoing reasons, we affirm the Board's final decision.

## AFFIRMED

### Costs

No costs.